# United States Court of Appeals
## For the First Circuit

No. 12-2045

UNITED STATES OF AMERICA,

Appellee,

v.

AUGUSTUS OKOYE,
a/k/a CHINEDU OKOYE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Selya and Thompson,
Circuit Judges.

Stuart W. Tisdale, Jr., court appointed counsel, with whom Tisdale & Davis, P.A., was on brief for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

September 27, 2013

**TORRUELLA, Circuit Judge.** Indicted on identity fraud and wire fraud charges for stealing his older brother's identity to obtain five fraudulent mortgages, Defendant/Appellant Augustus Okoye ("Okoye") entered into a plea agreement containing an appeal waiver. Pursuant to the agreement, Okoye was sentenced to 21 months of imprisonment and ordered to pay $454,207 in restitution to the two defrauded mortgage companies, First NLC Financial Services ("First NLC") and Taylor, Bean and Whittaker Mortgage Corp. ("Taylor Bean"). On appeal, Okoye takes issue with the restitution component of his sentence and argues that his appeal waiver does not extend to it. After carefully reviewing the record and the applicable law, we find that the waiver unambiguously encompassed restitution and thus dismiss Okoye's appeal.

## I. Background

In the fall of 2006, Okoye was facing foreclosure on his home at 278 Brush Hill Road, Milton, MA. Unable to come up with the $475,865 needed to stop the proceedings, Okoye stole his brother's identity to obtain a $600,000 mortgage loan from First NLC.[1] Okoye used this loan to pay off the outstanding balance on the mortgage and pocketed the remaining proceeds from the loan, which amounted to $74,520. Apparently emboldened by his success at First NLC, Okoye repeated essentially the same scheme at Taylor

---

[1] At the time, Okoye's brother apparently enjoyed some degree of success as an entrepreneur.

Bean, where he fraudulently obtained four additional mortgage loans totaling $438,750 to purchase two condos in Mattapan, MA.

Okoye made no payments on any of the mortgages, and his brother immediately noticed the negative impact on his personal credit rating. The fraudulent scheme came to light soon thereafter, with an affidavit authored by Okoye detailing every aspect of his misdeeds. Not surprisingly, the affidavit found its way to the federal authorities, and Okoye's prosecution ensued.

On January 25, 2010, after negotiations with the government, Okoye agreed to plead guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of identity fraud in violation of 18 U.S.C. § 1028(a)(7). In exchange, the government agreed not to charge him with aggravated identity theft. A written plea agreement memorialized all the terms of the parties' bargain.

As relevant here, section 2 of the plea agreement outlined the lists of penalties to which Okoye acknowledged being exposed, including up to twenty years of imprisonment, and "[r]estitution of up to the amount of the loss." Section 4, in turn, established the sentencing recommendations that the parties agreed the government would make. It set forth three different scenarios, each stating in no uncertain terms that "[r]estitution in the amount of the loss" would be an integral part of any sentencing recommendation. Restitution was again mentioned in

-3-

section 6 of the agreement, where Okoye agreed that he would protect his assets "until the fine, forfeiture and restitution ordered by the Court at sentencing . . . [we]re satisfied in full."

Section 7 of the agreement embodied the waiver-of-appeal provision at issue here. It made plain that

> [Okoye] agrees that he will not file a direct appeal nor collaterally challenge <u>any prison sentence</u> of 27 months or less. [Okoye] also agrees that, if the U.S. Attorney files a motion for downward departure . . . and the court does, in fact, depart downward on that basis, [Okoye] will not file a direct appeal nor collaterally challenge <u>any sentence</u> imposed.

(emphasis supplied).

At a March 23, 2010 change-of-plea hearing, the district court judge spoke candidly with Okoye to make sure that he understood his plea agreement. The court specifically commented on the sections regarding the parties' sentencing recommendations and the appeal waiver. Among other things, the court noted that appeal waivers are generally enforceable so long as there exists consideration for the defendant, and that Okoye's waiver presented no exception, given that the government agreed to forgo aggravated identity theft charges and recommend a reduced term of imprisonment.

The court convened a sentencing hearing on August 8, 2010. After listening to the parties' sentencing recommendations, it granted the government's motion for a downward departure and

sentenced Okoye to 21 months' imprisonment. Pursuant to the plea agreement, the court also ordered Okoye to pay $108,851 in restitution to First NLC and $345,356 to Taylor Bean.

Okoye immediately objected to First NLC's restitution award. He argued in open court that First NLC could not properly receive restitution as it had been dissolved and no successor-in-interest had come forward. Okoye maintained that there was thus no certainty as to either the amount owed or the identity of the party to be made whole. The court attempted to assuage these concerns by entering a conditional restitution order and giving the government 90 days to establish that First NLC was in fact a victim.

On August 9, 2012, one day after his sentencing hearing, Okoye lodged this appeal, which was perfected after the district court entered a final order of restitution in favor of Morgan Stanley Capital Holdings, LLC as First NLC's successor-in-interest.

## II. Discussion

Okoye advances a number of substantive challenges to the restitution order. The threshold inquiry, however, is whether Okoye's appeal falls within the scope of the waiver-of-appeal provision contained in his plea agreement.[2] In making this determination, we interpret the parties' agreement under basic contract principles, United States v. Ríos-Hernández, 645 F.3d

---

[2] Okoye does not challenge the validity of his plea agreement, and we have no reason to believe that it is defective.

-5-

456, 461 (1st Cir. 2011) (citing <u>United States</u> v. <u>Acosta-Román</u>, 549 F.3d 1, 3 (1st Cir. 2008)), and construe any ambiguities in the waiver provision in favor of allowing the appeal to proceed. <u>United States</u> v. <u>Fernández-Cabrera</u>, 625 F.3d 48, 51 (1st Cir. 2010). Mindful of this rule of construction, Okoye urges us to find that the waiver-of-appeal provision in his plea agreement is ambiguous insofar as it applies to restitution awards. According to Okoye, such ambiguity stems from the use of the word "prison" as a qualifier to the word "sentence" in some sections of the waiver but not in others. In other words, Okoye pins all his hopes on the proposition that the waiver is ambiguous as to whether the import of the word "sentence" is limited to "prison sentence" even where not explicitly indicated. We wholeheartedly disagree.

Our analysis is anchored in a well-settled tenet of contractual exegesis: "In interpreting contractual language, we consider the contract as a whole. Its meaning cannot be delineated by isolating words and interpreting them as though they stood alone." <u>Farmers Ins. Exchange</u> v. <u>RNK, Inc.</u>, 632 F.3d 777, 785 (1st Cir. 2011) (internal quotation marks omitted); <u>see also</u> <u>United States</u> v. <u>Alegría</u>, 192 F.3d 179, 185 (1st Cir. 1999) ("[P]lea agreements, like contracts generally, should be construed where possible to give effect to every term and phrase."); <u>Smart</u> v. <u>Gillent Co. Long-Term Disability Plan</u>, 70 F.3d 173, 179 (1st Cir. 1995) ("Accepted canons of construction forbid the balkanization of

contracts for interpretive purposes."). Here, a holistic reading of the plea agreement unequivocally negates Okoye's proposition. In fact, the plea agreement in at least three different sections unambiguously established that Okoye's sentence would include "restitution in the amount of the loss." Accordingly, at this late hour, Okoye cannot be heard to say that he was uncertain as to whether the term "any sentence" as used in the waiver-of-appeal provision encompassed restitution. He must now live with the consequences of his bargain. See United States v. Donath, 616 F.3d 80, 84 (1st Cir. 2010) ("When enforcing the appellate waiver, we stress that both sides are obligated to live by the bargain they made.").

In any event, we would reach the same result even under Okoye's atomistic reading of the waiver-of-appeal provision. Okoye makes much of the way in which the waiver-of-appeal provision is structured. Specifically, he directs our attention to the fact that the word "prison" qualifies the word "sentence" at the beginning of the waiver-of-appeal provision. In Okoye's view, "[t]hat limited sense of [the word] 'sentence' . . . carries forward and attaches by implication to the phrase 'any sentence' in the next statement." Okoye's submissions on appeal, however, provide us with absolutely no guidance as to how or why we should get around the hoary maxim expressio unius est exclusio alterius, which "instructs that when certain matters are mentioned in a

contract, other similar matters not mentioned were intended to be excluded." Institut Pasteur v. Cambridge Biotech Corp., 104 F.3d 489, 495 (1st Cir. 1997). Put differently, Okoye provides us with nothing to conclude that the parties did not mean to exclude the qualifier "prison" when referring to "any sentence" in the closing clause of the waiver-of-appeal provision. Our independent analysis of the record has revealed no reason so to conclude.

To complicate matters further for Okoye, his proposed construction of the phrase "any sentence" is at odds with our precedent. See, e.g., United States v. Acosta, 303 F.3d 78, 87 (1st Cir. 2002) ("It is undisputed that restitution is part of a sentence.") (citing United States v. Wallen, 953 F.2d 3, 4 (1st Cir. 1991)). It also contravenes the import many of our sister circuits have afforded to the word "sentence." See, e.g., United States v. Pérez, 514 F.3d 296, 299 (3d Cir. 2007) ("By waiving his right to appeal his criminal sentence, [defendant] waived his right to appeal the restitution order."); United States v. Cooper, 498 F.3d 1156, 1159 (10th Cir. 2007)(holding that appeal waiver barred appeal of restitution order, where plea agreement clearly specified that restitution was part of the defendant's sentence); United States v. Cohen, 459 F.3d 490, 497 (4th Cir. 2006) (finding that defendant waived right to appeal restitution order where he agreed to "waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed"); United

States v. <u>Sharp</u>, 442 F.3d 946, 948, 952 (6th Cir. 2006) (same); <u>United States</u> v. <u>Behrman</u>, 235 F.3d 1049, 1052 (7th Cir. 2000) (holding that "[a]n agreement waiving appeal from 'any sentence within the maximum provided in Title 18' or similar language" waives the right to appeal an order of restitution).[3] Okoye advances no reason why we should stray away from the foregoing authority. Needless to say, we will not do so here.

### III. <u>Conclusion</u>

For the reasons stated above, Okoye's appeal is hereby dismissed.

**Dismissed.**

---

[3] Notably, some of our sister circuits were examining plea agreements which <u>at no point</u> specifically referenced restitution as part of the defendant's sentence. <u>See</u> <u>Pérez</u>, 514 F.3d at 299; <u>Cohen</u>, 459 F.3d at 497; <u>Sharp</u>, 442 F.3d at 952. While we have previously stated that "the circuits are divided as to whether a waiver-of-appeal provision contained in a plea agreement, <u>which does not specifically refer to restitution</u>, precludes a subsequent appeal of a restitutionary order," <u>United States</u> v. <u>Salas-Fernández</u>, 620 F.3d 45, 47 (1st Cir. 2010) (emphasis supplied), we have never identified such disagreement where, as here, the plea agreement specifically outlines restitution as part of a defendant's sentence. There is a stronger rationale for barring an appeal under such circumstances, given that the defendant is on notice of the restitutionary aspect of his sentence.