# United States Court of Appeals
## For the First Circuit

No. 13-1613

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUELITO ARROYO-BLAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Rick Nemcik-Cruz for appellant.
John A. Matthews II, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, were on brief, for appellee.

April 15, 2015

**THOMPSON, Circuit Judge**.  The ostrich's undeserved claim to fame is that it buries its head in the sand instead of facing danger.[1]  Parties to litigation sometimes act like this, too.  Case in point is our appellant, Miguelito Arroyo-Blas ("Arroyo-Blas"), who by ignoring a plea agreement's clear waiver of appeal provision fares no better here than we imagine our proverbial ostrich does when confronted by a predator in the wild.

## I.  BACKGROUND

This case has its genesis in Arroyo-Blas's guilty plea (pursuant to a written Plea Agreement) to Count I of a four-count Indictment charging him and several others with various drug crimes.  In entering his plea, Arroyo-Blas admitted that he was an organizer and leader of a drug conspiracy that imported five or more kilograms of cocaine into Puerto Rico from June 2007 to January 2010.

Center stage in this appeal is occupied by the Plea Agreement, not the facts of the offense.  The Agreement was made pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and (C).  Because these rules loom large over what's to come, we set them out now.

---

[1] "Not that ostriches _really_ bury their heads in the sand when threatened," Gonzalez-Servin v. Ford Motor Co., 662 F.3d 931, 934 (7th Cir. 2011), but the image persists.  And it suits our purposes well.

Rule 11(c) provides, as important here, the following:

**(1) In General.** An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

**(A)** not bring, or will move to dismiss, other charges;

. . .

**(C)** agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c). "Such a vehicle--a so-called C-type plea agreement--allows the parties to bind the district court to a pre-agreed sentence if the court accepts the plea." United States v. Rivera-Martínez, 665 F.3d 344, 345 (1st Cir. 2011).

Arroyo-Blas's Plea Agreement stated that he would plead guilty to Count I and that the government would dismiss the remaining counts against him. He agreed to "accept[] responsibility for more than fifty (50) kilograms but less than one hundred fifty (150) kilograms of cocaine" for sentencing purposes. The parties applied the agreed-upon drug quantity to the United States Sentencing Guidelines ("Guidelines") to come up with a

-3-

suggested offense level and sentencing range. The parties'
calculations factored in Arroyo-Blas's role as an organizer and
leader in the conspiracy as an aggravating circumstance, and his
acceptance of responsibility as a mitigating one. All told, the
drug quantity and adjustments translated to a Total Offense Level
of 35 and a sentencing range of 168-210 months, assuming that
Arroyo-Blas would be in Criminal History Category I.[2]

After calculating the Guidelines range, the "parties
agree[d] on a C-type range of 180 to 204 months of imprisonment,
where the defendant may argue for a sentence of 180 months of
imprisonment and the Government may argue for a sentence of 204
months of imprisonment."[3] A separate section of the Plea Agreement
indicated that "[p]ursuant to Rule 11(c)(1)(C) of the Federal Rules
of Criminal Procedure defendant understands that the parties have
agreed to a specific sentence because all parties understand that
it is the appropriate disposition of this case." It further stated
that "[i]f the Court accepts this Plea Agreement, the Court is
bound by the parties['] sentencing recommendation."

---

[2] The Plea Agreement explicitly provided that "[t]he parties
make **NO** stipulation as to defendant's Criminal History Category."

[3] The parties agreed to the disposition of certain forfeiture
allegations, as well, but those are not germane to this appeal.
The government also dismissed the other counts against Arroyo-Blas,
but we need not get into that either.

-4-

The Plea Agreement also contained a waiver of appeal:

> The defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation of this PLEA AND FORFEITURE AGREEMENT, that is, with a sentence within the above-mentioned range of 180 to 204 months of imprisonment.

At the change of plea hearing before a magistrate judge, Arroyo-Blas answered with an unambiguous "Yes" when asked whether he understood that he was agreeing to waive his right to appeal should he receive a sentence in accordance with the "terms, conditions, and recommendations" set forth in the agreement. The magistrate judge recommended that Arroyo-Blas's plea pursuant to the Plea Agreement be accepted, which the district judge did.[4]

The Presentence Investigation Report ("PSR"), prepared after the district judge accepted Arroyo-Blas's guilty plea, set forth the probation department's view of how the Guidelines should apply. The PSR's calculations tracked those of the Plea Agreement with respect to the nature of the offense and applicable enhancements and adjustments. Unlike the Plea Agreement, the PSR went on to address Arroyo-Blas's criminal history, which included a conviction on a charge of failure to report monetary instruments.

---

[4] In an eyebrow-raising move, the parties did not see fit to include the transcript of the magistrate's hearing or a copy of the report and recommendation in their joint appendix. This omission put the onus on the Court to locate these materials in the district court's docket.

-5-

Thanks to this conviction, the PSR set Arroyo-Blas's Criminal History Category at II, which called for a Guidelines sentence between 188 and 235 months.

At sentencing, the district judge recognized right off the bat that Arroyo-Blas's "type-C plea . . . allows for a sentence within that range of 180 to 204 months." The judge expressed his understanding that he could "sentence [Arroyo-Blas] anywhere . . . in between that range." Defense counsel replied by saying, "[w]e understand that, Your Honor."

Defense counsel's main argument at sentencing--and one he continues to press on appeal--was that Arroyo-Blas's Criminal History Category should be I, not II. The district judge disagreed and decided "to consider that [Arroyo-Blas has] a criminal history category [of] II which doesn't alter in any way your plea agreement because the plea agreement allows for the Court to sentence him anywhere between 180 and 204" months. Thus, the district judge didn't consider the Criminal History Category's interaction with the Guidelines range--168-210 months with it set at I, and 188-235 months at II--to have any effect on the actual range of time to which Arroyo-Blas was exposed. Ultimately, after running through the facts of the offense and taking Arroyo-Blas's personal history and characteristics into account, the judge found "that a sentence at the lower end of the applicable guideline range" was appropriate, and imposed a 188-month sentence.

This appeal followed.

## II.  DISCUSSION

Arroyo-Blas wants to be able to tell us that the district judge erred in putting him in Criminal History Category II, which subjected him to a higher Guidelines range.  He believes this error worked to his detriment, as by choosing 188 months, the district judge clearly applied the bottom of the 188-235-month guideline range.  Had he been put in Category I, Arroyo-Blas believes he would have received a shorter sentence.

The Plea Agreement's waiver of appeal, however, may bar his appeal in its entirety.  Accordingly, we must first conduct a "threshold inquiry" to determine whether "[Arroyo-Blas's] appeal falls within the scope of the waiver-of-appeal provision contained in his plea agreement."  United States v. Okoye, 731 F.3d 46, 49 (1st Cir. 2013).

When considering the scope of a waiver of appeal, "we interpret the parties' agreement under basic contract principles." Id.; see also United States v. Ocasio-Cancel, 727 F.3d 85, 89 (1st Cir. 2013) ("Plea agreements should be given their plain meaning.").  Should we find any ambiguities in the waiver provision, we resolve them in favor of allowing the appeal to proceed.  Okoye, 731 F.3d at 49.  But, "[i]f a plea agreement unambiguously resolves an issue, that usually ends the judicial inquiry."  United States v. Alegria, 192 F.3d 179, 183 (1st Cir.

1999). And, as in contract law, we will not "conjur[e] up an ambiguity [in a plea agreement] where none legitimately exists." United States v. Anderson, 921 F.2d 335, 338 (1st Cir. 1990).

Despite the importance of the waiver of appeal issue, Arroyo-Blas's opening brief fails to address it in any meaningful way. Indeed, the only time it is mentioned is in his statement of subject matter and appellate jurisdiction. And this treatment is confined to just two sentences--one acknowledging the waiver's existence, and the second making the conclusory statement that the waiver does not "bar this appeal as the claimed errors are misapplication of the Sentencing Guidelines"--followed by a straight-up cite, with no explanation, to our opinion in United States v. McCoy, 508 F.3d 74, 78 (1st Cir. 2007). He makes no other argument as to why the waiver of appeal should not result in dismissal of his appeal.

The government starts off its brief by telling us that we should enforce the waiver of appeal. First, it takes aim at Arroyo-Blas's briefing, saying that his argument about the waiver's enforceability is so "cursory" that it has been waived. The government then turns to the merits and explains why the waiver of appeal is enforceable. Implicit throughout its brief is the idea that the waiver applies because Arroyo-Blas's appeal falls within its scope.

Having reviewed the terms and scope of Arroyo-Blas's waiver of appeal ourselves, they could hardly be more clear. Arroyo-Blas unambiguously agreed to waive his appeal provided he was sentenced to prison for somewhere between 180 and 204 months. And that is exactly what happened. So it would appear that the plain language of his waiver operates to bar this appeal.

The only case Arroyo-Blas cites in support of his position that the waiver does not apply, United States v. McCoy, 508 F.3d 74 (1st Cir. 2007), is readily distinguishable. "Waivers of appeal," we observed in McCoy, "vary considerably in their language[,] and the scope of the waiver is simply a matter of what the parties agreed to in the particular case." Id. at 77. The plea agreement in McCoy provided for a waiver of appeal that "set[] forth no proposed sentence or sentencing range." Id. at 78. Rather, the parties agreed that the government would "request '[i]ncarceration within the guideline range.'" Id. (alteration in original). This language, we found, "preclude[d] McCoy from challenging any sentence that falls 'within the guideline range.'" Id.

But the parties in that case left open the question of what that guideline range was. When McCoy appealed his sentence, he argued that "by both a legal error and a mathematical mistake, the district court mis-measured the loss [suffered by the victim of his fraud] and so misapplied the guidelines." Id. This particular

-9-

argument was not barred, we found, because if McCoy's position was correct, "then his sentence was not 'within the guideline range.'" Id. The takeaway is that language in a plea agreement waiving the right to appeal only when "'the sentence imposed . . . is within the guidelines' does not waive the right to appeal an alleged misapplication of the guidelines." Id. (quoting United States v. Bowden, 975 F.2d 1080, 1081 n.1 (4th Cir. 1992)).

Arroyo-Blas's appeal waiver is quite different. Instead of leaving the sentencing range up to the district judge's determination, Arroyo-Blas and the government were right up front about what they wanted: Arroyo-Blas agreed to waive any appeal provided he received a sentence falling anywhere between 180 and 204 months in length. He quite clearly did not reserve the right to appeal should the district judge place him in anything other than Criminal History Category I. And, because it was a "C-type" plea agreement, the parties knew that if the district judge accepted it, it would be bound to impose a sentence within the range agreed to by the parties. This is reflective of the parties' overriding and pragmatic concern being the amount of jail-time Arroyo-Blas would get.

As we have said, "[p]lea agreements should be given their plain meaning." Ocasio-Cancel, 727 F.3d at 89. Because Arroyo-Blas agreed to forgo an appeal should he be sent to jail anywhere between 180 and 204 months, and because 188 months is within that

range, we find that the waiver applies here to bar Arroyo-Blas's appeal.

This brings an end to our analysis. After all, Arroyo-Blas relied solely on his contention that the waiver of appeal does not apply and eschewed any argument that the waiver, if applicable, is unenforceable. Indeed, his opening brief did not even acknowledge our key case dealing with an appeal waiver's enforceability, United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), nor did it address any of the factors we take into account when deciding whether or not we should enforce the waiver, see United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008) ("[A]ppellate waivers are binding so long as: (1) the written plea agreement clearly delineates the scope of the waiver; (2) the district court inquired specifically at the plea hearing about any waiver of appellate rights; and (3) the denial of the right to appeal would not constitute a miscarriage of justice." (citing Teeter, 257 F.3d at 25)). Arroyo-Blas's appellate strategy appears to have been to ignore the waiver of appeal and hope that the government wouldn't bring it up (and, apparently, that we wouldn't notice it either).[5]

---

[5] Arroyo-Blas's reply brief feints toward an argument about enforceability, only to settle on repackaging his original argument that the judge miscalculated the Guidelines range. He also throws in a conclusory statement that, in his view, enforcing the appeal waiver violates constitutional equal protection principles. Even if these arguments had been sufficiently developed in his reply, it would have done him no good anyway. This is because "it is well-

-11-

At oral argument, when we pointed out his brief's abject failure to engage with the waiver of appeal, counsel expressed his understanding that a waiver of appeal is akin to an affirmative defense and, therefore, need not be addressed unless and until the government raises the issue. Counsel is mistaken. We have never equated a waiver of appeal with an affirmative defense that need not be addressed by an appellant's opening brief. Doing so would be nonsensical given that a defendant is required to affirmatively acknowledge his agreement to and understanding of an appeal waiver provision. See Edelen, 539 F.3d at 85. Indeed, the very purpose of an appeal waiver is to bar an appeal.

To that end, we have indicated that an appellant who fails to make an argument with respect to an appeal waiver in his opening brief risks waiving that issue. See United States v. Lara-Joglar, 400 F. App'x 565, 570 (1st Cir. 2010) (per curiam) (stating that an appellant who failed to brief a certain exception to the enforcement of an appeal waiver "arguably waived the application of that exception," but proceeding to find that enforcing the waiver of appeal would not result in a miscarriage of justice); United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006) (finding we could "simply end our inquiry" where a party failed to argue that

settled that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed." United States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993) (internal quotation marks omitted).

-12-

enforcing appeal waiver would cause a miscarriage of justice, but attempting, "[i]n an abundance of caution . . . to sift the rudiments of his claim from the record").

Let today's decision remove any lingering doubts. We expect and require counsel to address a waiver of appeal head-on and explain why we should entertain the appeal. An appellant who fails to do this buries his head in the sand and expects that harm will pass him by. "The ostrich is a noble animal, but not a proper model for an appellate advocate." Gonzalez-Servin v. Ford Motor Co., 662 F.3d 931, 934 (7th Cir. 2011).

True, in the past we have deigned to "sift the rudiments of [the] claim from the record" when an appellant failed to make a complete argument about an appeal waiver in his opening brief. Gil-Quezada, 445 F.3d at 37. Yet, nowhere does Arroyo-Blas say that the scope of his waiver is unclear or that the district court didn't do a good enough job of telling him what that waiver meant. He also fails to tell us why denying the right to appeal would work a miscarriage of justice when his sentence falls on the lower end of the 180-204-month range he agreed to. Simply put, Arroyo-Blas has given us nothing to work with.

This failure of briefing brings to mind our words from more than a quarter-century ago: "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument,

and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Arroyo-Blas has waived any argument that we should refuse to enforce his waiver of appeal.[6]

Appeal **dismissed.**

---

[6] One last matter. In his brief, Arroyo-Blas tells us that subsequent amendments to the Guidelines have reduced his base offense level and provide for a lower sentencing range under either Criminal History Category I or II, and that he should get the benefits of these amendments at resentencing. Although neither party mentions it (for reasons unknown), Arroyo-Blas has already filed with the district court a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), and a magistrate judge has recommended the motion be allowed. The district court's resolution of this issue, however it may come out, is not before us in this appeal and we make no comment on it.