# United States Court of Appeals
## For the First Circuit

Nos. 14-1514, 14-1515, 14-1516

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL ABNER BETANCOURT-PÉREZ,

Defendant, Appellant.


APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]


Before

Lynch, Selya, and Thompson,
Circuit Judges.


Joshua L. Gordon on brief for appellant.
Mainon A. Schwartz, Assistant United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.


August 10, 2016

**THOMPSON**, **Circuit Judge**.  For his involvement in various illegal drug-related activities, Defendant-Appellant Angel Abner Betancourt-Pérez was indicted in three separate criminal cases, which were resolved by a single plea agreement.  Betancourt-Pérez now appeals his sentence, arguing that the district court should have accepted the plea agreement's guideline calculations.  But since Betancourt-Pérez waived his right to appeal, we dismiss.

BACKGROUND[1]

## A. Arrest and Indictments

On May 5, 2010, the government unsealed an indictment charging 70 co-conspirators for their participation in a large drug trafficking organization known as "El Castillo," which operated out of a public housing project in Carolina, Puerto Rico, and its surrounding areas.  Betancourt-Pérez, one of El Castillo's "runners,"[2] was among those indicted on various drug and firearm counts.

Although an arrest warrant was issued for Betancourt-Pérez, he remained a fugitive for over a year.  Finally, on May

---

[1] Because Betancourt-Pérez's convictions resulted from a guilty plea, we draw the facts from the plea agreement, the Presentence Investigation ("PSI") report, and the transcript of the sentencing hearing.  See United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013).

[2] A "runner" is basically a go-between for the drug-ring higher-ups.  The runner supplies the street-level sellers with drugs, collects the money from the sales, and pays the sellers their share.

10, 2011, after receiving a tip, law enforcement agents surveilled Betancourt-Pérez's apartment and observed him loading boxes (in which large quantities of marijuana were later found) into a vehicle in the parking lot. They arrested Betancourt-Pérez that day, and also executed a search warrant for his apartment where they found and seized more drugs and a gun.[3] Based on what the agents had observed and seized at the apartment, the government filed a second indictment, charging Betancourt-Pérez with two drug counts and a firearm count.

Now, as it turns out, Betancourt-Pérez was not only a member of El Castillo's operations, but also a part of another drug conspiracy -- this one engaged in sourcing marijuana from Mexico, California, and Florida, and distributing it throughout Puerto Rico. For these separate drug-related activities, Betancourt-Pérez was indicted a third time.

**B. Plea Deal and Sentencing**

The parties eventually negotiated a plea deal that resolved the charges in all three of Betancourt-Pérez's criminal cases. As part of the deal, Betancourt-Pérez agreed to plead guilty to one count of conspiracy to possess with intent to distribute from each of the three indictments, involving between

---

[3] The government also found a collection of jewelry, the topic of a related civil forfeiture appeal, which we address in a separate opinion issued herewith.

3.5 and 5 kilograms of cocaine, between 2 and 3.5 kilograms of cocaine, and between 100 and 400 kilograms of marijuana, respectively, as well as one count from the second indictment for possession of a firearm in furtherance of a drug trafficking crime.

Because of the relatedness of the drug crimes, the plea deal grouped the three conspiracy counts together, and calculated a guideline range of 51 to 63 months (an erroneous calculation, the parties now agree).[4]  As for the firearm charge, as provided for by U.S.S.G. § 2K2.4(b), the plea agreement assigned a consecutive guideline sentence equal to the statutory minimum, in this case 60 months, 18 U.S.C. § 924(c)(1)(A)(i).

---

[4] The plea agreement came to this guideline sentence based on a total offense level of 24 and a criminal history category ("CHC") of 1.  The plea agreement determined the total offense level as follows: it assigned a base offense level ("BOL") of 26 based on the quantity of drugs involved, added 1 level for protected location (the public housing project), and subtracted 3 levels for acceptance of responsibility.  But the BOL calculation was incorrect.

Based on the drug quantities to which Betancourt-Pérez pled guilty, the three conspiracy counts together involved the "marihuana equivalent" of between 1,200 and 2,200 kilograms of a controlled substance, for which the BOL (at the time of these proceedings) was 32.  See U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1 application note 8(B), (D) (U.S. Sentencing Comm'n 2012) (instructing that 1 gram of cocaine is equal to 200 grams of marijuana); id. § 2D1.1(c)(5) (assigning a BOL of 30 for offenses involving "at least 1,000 KG but less than 3,000 KG of Marihuana").  Despite elsewhere stating clearly the cocaine and marijuana quantities involved, the plea agreement inexplicably assigned a BOL based on only 100 to 400 kilograms of marijuana. It was also mistaken in adding only 1 level for the protected location; it should have added 2.  See id. § 2D1.2(a)(1).

- 4 -

The plea agreement went on to memorialize a joint sentencing recommendation: concurrent sentences of 60 to 120 months for the three conspiracy counts, and a consecutive 60-month sentence for the firearm charge. The agreement also contained a provision in which Betancourt-Pérez waived his right to appeal, so long as he was sentenced in accordance with this sentencing recommendation.

Betancourt-Pérez pled guilty to the four counts on October 18, 2013. A PSI report was completed in April 2014. Like the parties' plea agreement, the PSI report grouped the three conspiracy counts together. Unlike the plea agreement, the PSI report assigned (correctly) a total offense level of 31.[5] Based on the total offense level and Betancourt-Pérez's CHC of 1, the PSI report put the guideline range for the three conspiracy counts at 108 to 135 months. For the firearm charge, the guideline sentence remained the 60-month statutory minimum under § 924(c)(1)(A)(i).

Betancourt-Pérez objected to the PSI report's guideline calculations and argued the court should instead use the calculations in the plea agreement because the parties had agreed

---

[5] The PSI report came to a total offense level of 31 by calculating (properly, as we explain in our previous footnote) a BOL of 32 based on the quantity of drugs involved. It then added 2 levels for the involvement of a protected location, and subtracted 3 for acceptance of responsibility.

to those calculations in coming to their deal.[6]  But in the end, the district judge applied the correctly calculated guideline range, and sentenced Betancourt-Pérez to concurrent 108-month (9-year) sentences for the three conspiracy counts, which the judge reasoned was still within the bargained-for 60-to-120-month range to which the parties had agreed.  For the firearm count, the judge imposed the agreed-upon 60-month (5-year) sentence, to be served consecutively, thus sentencing Betancourt-Pérez to a total of 168 months (14 years) of imprisonment.  Betancourt-Pérez timely appealed.

## DISCUSSION

On appeal, Betancourt-Pérez attempts to challenge the district judge's refusal to adopt the plea agreement's guideline calculations at sentencing.  But we can go no further until we first address the threshold inquiry of whether Betancourt-Pérez's appeal is waived.  See United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007).

---

[6] We take a moment to square away a bit of housekeeping.  The merits of Betancourt-Pérez's appeal (which, for reasons we discuss below, we do not reach) again raise this argument before us.  In support of the argument, Betancourt-Pérez moved during briefing to supplement the appellate record with an unsigned draft of a previous, failed plea agreement in which the guideline range was correctly calculated.  Betancourt-Pérez argued that the fact that this prior deal failed shows he would not have agreed to the current plea deal but for its (erroneous) lower guideline calculations.  Because we do not reach the case's merits, it makes no difference, and so we assume, favorably to Betancourt-Pérez, that we may admit the draft agreement into the record.

As best we can tell, Betancourt-Pérez attempts to get around the waiver by arguing (1) that he may not have been sentenced in accord with the plea agreement because the agreement's sentence recommendation provision is ambiguous, and (2) that the probation office's filing of a PSI report that contained contradictory guideline calculations constituted a breach of the plea agreement. Unfortunately for Betancourt-Pérez, we are convinced by neither argument.

**A. Waiver**

Appeal waivers in plea agreements are "presumptively valid," so long as: (1) the agreement clearly delineates the waiver's scope; (2) the district court specifically inquired about the waiver at the plea hearing; and (3) denial of the right to appeal would not constitute a miscarriage of justice. United States v. Teeter, 257 F.3d 14, 23-25 (1st Cir. 2001).

In considering the scope of an appeal waiver, we apply basic contract principles. United States v. Arroyo-Blas, 783 F.3d 361, 365 (1st Cir. 2015). Ambiguities are construed in favor of allowing the appeal to proceed, "[b]ut, '[i]f a plea agreement unambiguously resolves an issue, that usually ends the judicial inquiry.'" Id. at 365 (second alteration in original) (quoting United States v. Alegria, 192 F.3d 179, 183 (1st Cir. 1999)).

Here, the waiver of appeal in the parties' plea agreement states: "The defendant knowingly and voluntarily waives the right

to appeal the judgment and sentence in this case, provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement."

Betancourt-Pérez argues that the sentence recommendation provision is ambiguous, and that it is therefore uncertain whether his sentence was, in fact, in accord with the provision. The sentence recommendation provision reads, in full:

> As to COUNT ONE[, the conspiracy count in each of the three criminal cases,] [t]he defendant may request a sentence of sixty (60) months of imprisonment and the United States reserve[s] the right to request a sentence of up to one hundred and twenty (120) months of imprisonment to be served concurrently with each other, based on the factors in [18 U.S.C. § 3553(a)].

> Additionally, as to [the firearm count,] the parties agree to recommend that defendant be sentenced to sixty (60) months of imprisonment, consecutive to any term of imprisonment imposed for COUNT ONE in [the three] criminal cases. The parties agree that any recommendation for a term of imprisonment of less than one hundred and twenty (120) months, will constitute a breach of the plea agreement.

As to the provision's first sentence, Betancourt-Pérez attempts to argue that, despite its plain words to the contrary, it must be interpreted as permitting a maximum recommendation of not 120 months, but only 63 months, because this reading "harmonize[s]" the plea agreement's sentence recommendation with its guideline calculation, erroneous though it may be, of 51 to 63

- 8 -

months for the conspiracy counts.  We disagree.[7]  The text of the provision's first two sentences is unambiguous: the sentences state that the parties will recommend the judge impose concurrent sentences in the 60-to-120-month range for the three conspiracy counts and a consecutive 60-month sentence for the firearm count.

We think it equally clear that the third sentence then goes on to recap that the lowest overall sentence that could accordingly be recommended is 120 months (i.e., a minimum 60 months for the conspiracy counts, plus 60 months for the firearm count).  But Betancourt-Pérez quibbles with this third sentence as well: he argues that it is ambiguous because it can be interpreted as prohibiting a recommendation of less than 120 months either for the whole sentence, or just for the firearm count.  Specifically, Betancourt-Pérez reasons that the first two sentences begin with "As to COUNT ONE" and "Additionally, as to [the firearm count]," and therefore make clear to which counts they refer.  The third sentence, he argues, contains no such clause and thus, by contrast,

---

[7] It appears Betancourt-Pérez himself disagreed as well. During the change of plea hearing, Betancourt-Pérez stated he "underst[oo]d clearly" that the plea agreement provided that, "for purposes of sentencing recommendations" for the three conspiracy charges, he could "request a sentence of 60 months of imprisonment" and the government could "request a sentence up to 120 months." Indeed, a 60-to-120-month sentence recommendation for the conspiracy counts aligns with the guideline range for the drug quantities to which Betancourt-Pérez pled guilty.

is imprecise as to whether it refers to all the counts or the firearm count only.

But we see no such ambiguity. To the contrary, we think the fact that the third sentence is the only one in the trio without a qualifier clarifies that the third sentence is not restricted to the firearm count, and applies instead to the overall sentence. Furthermore, applying basic contract principles, we consider the agreement as a whole. United States v. Okoye, 731 F.3d 46, 49 (1st Cir. 2013). Preceding sections of the plea agreement make it clear that the parties agreed to a guideline sentence of 60 months for the firearm count to be served consecutively to any sentence for the conspiracy counts.[8]

There is thus no basis for us to read into the provision the ambiguity that Betancourt-Pérez suggests. The sentence recommendation provision makes plain that the parties contemplated a total term of imprisonment for all the charges of no less than 120 months and no more than 180 months. When the district court imposed the ultimate sentence of 168 months of imprisonment, it imposed a sentence that fell squarely within the parameters of the parties' recommendation.

---

[8] Betancourt-Pérez also stated during the change of plea hearing that he "underst[oo]d clearly" that both parties agreed he would "be sentenced to 60 months of imprisonment[ for the firearm offense], which has to be consecutive to any sentence imposed [for the conspiracy counts]."

Betancourt-Pérez has not met his burden of showing that he meets Teeter's second and third requirements, either. The judge dutifully inquired about the waiver during the change-of-plea colloquy, and Betancourt-Pérez does not argue otherwise. Nor does he point us to any error sufficiently "glaring" that it requires reversal under Teeter's sparingly applied "miscarriage of justice" exception. Miliano, 480 F.3d at 608. In fact, his argument that the judge erred in rejecting the plea agreement's guideline calculation is altogether unavailing. The parties' guideline calculations were not binding on the judge, see Fed. R. Crim. P. 11(c)(3)(B), as Betancourt-Pérez expressly acknowledged in the plea agreement and during his change-of-plea hearing. And the text of the plea agreement, as well as the transcripts from the change-of-plea and sentencing hearings, all make plain that Betancourt-Pérez fully understood he had bargained for a total sentence between 120 and 180 months (or 10 to 15 years). This is indeed what the government recommended, and it is what he got. That the district judge arrived at the ultimate 168-month (14-year) sentence by way of different (more correct) arithmetic than Betancourt-Pérez would have preferred does not invalidate the appeal waiver.

## B. Breach

As for the claim that the government breached the plea agreement -- an argument subject to plain error review because

Betancourt-Pérez never raised it below, see United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014) -- it is utterly without merit. Betancourt-Pérez points to no statement or direct conduct on the part of the prosecution that can be seen as a violation of the agreement. Instead, he claims that merely "allowing submission of the PSI [report], in which the grouping calculation contravenes the plea agreement, [was] itself a breach of the plea agreement." We disagree.

Neither the probation officer who prepared the PSI report nor the district court, which accepted its filing, were parties to the plea agreement. The agreement was between Betancourt-Pérez and the United States Attorney's Office for the District of Puerto Rico, which has no control over the preparation or submission of the PSI report. In fact, in preparing a PSI report, the probation officer is expected "to exercise his independent judgment as to the application of the guidelines." United States v. Fraza, 106 F.3d 1050, 1056 (1st Cir. 1997). The PSI report therefore cannot be attributed to the prosecution, nor can the district court's consideration and acceptance of the report's independent recommendations be considered a breach of the parties' agreement.

Betancourt-Pérez was thus sentenced within the parameters of the plea agreement's appeal waiver, and the plea

- 12 -

agreement was not breached.  Accordingly, we dismiss Betancourt-Pérez's appeal.