In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 18-2778

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JIMMY L. DESOTELL,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 17-CR-111 — **William C. Griesbach**, *Chief Judge.*

_____

ARGUED APRIL 9, 2019 — DECIDED JULY 11, 2019

_____

Before KANNE, BARRETT, and BRENNAN, *Circuit Judges.*

KANNE, *Circuit Judge.* Jimmy Desotell had an unexpected
encounter with police officers one evening in Green Bay, Wis-
consin. While he was trying to borrow a car from a friend, po-
lice arrived and informed him that the vehicle was suspected
of use in a retail theft. But after being told that he was not a
suspect and was free to leave, Desotell stuck around. He tried
to remove bags from the car as police were about to search it,
arousing the officers' suspicion. As it turned out, the bags

contained a firearm and drugs. After unsuccessfully trying to suppress the evidence, he agreed to plead. Despite tensions during negotiations, Desotell eventually signed a plea deal expressly waiving his right to appeal the motion to suppress. After an extensive colloquy in the district court hammering home the waiver, Desotell now appeals the precise issue he may not appeal. We therefore dismiss it as waived.

## I. BACKGROUND

Green Bay police arrested Desotell on May 30, 2017 while investigating a retail theft. He admitted to owning two bags containing methamphetamine and a handgun, which police discovered while searching a vehicle that had been involved in the theft earlier that day. Desotell was not a suspect in the theft; he just happened to be in the wrong place, at the wrong time, with the wrong stuff.

A grand jury indicted Desotell on two counts: 1) conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of methamphetamine, 21 U.S.C. §§ 846, 841(b)(1)(A); and 2) knowingly using or carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). The district court appointed a Federal Defender to represent Desotell immediately after his arrest. Desotell agreed to plead guilty and cooperate with investigators, giving useful information about his drug contacts. In return, the government agreed not to file a prosecutor's information detailing Desotell's prior convictions, thereby avoiding a higher mandatory-minimum sentence.

In December 2017, Desotell retained private attorney John Miller Carroll and discharged his Federal Defender. Shortly after obtaining new counsel, Desotell moved to suppress the

evidence found in his bags, arguing that his detention at the scene and the search violated the Fourth Amendment.

While the motion was pending, the government informed Desotell that he had to sign the plea agreement by March 9, 2018. Presumably, signing the agreement would have meant withdrawing the motion to suppress, so Desotell delayed. The deadline came and went without a ruling on the motion, and Desotell did not sign the agreement. The government, assuming that Desotell intended to litigate his motion rather than plead guilty, acted as if the agreement were no longer on the table. It filed the information and continued to prepare for trial. Desotell objected and moved to enforce the unsigned plea agreement. The court denied the motion to suppress on April 19. Desotell then came back to the table. He signed a plea agreement and the government withdrew the information.

The district court held a change-of-plea hearing on May 8. The court first confirmed the parties' understanding that the agreement was a general plea, not a conditional plea. In other words, the document contained "no reservations of any right to appeal from the denial of the Motion to Suppress." Desotell, through his counsel (Carroll), agreed that the document "contain[ed] a general clause about waiving any pretrial motions." But then defense counsel emphasized that he did not believe the waiver was effective because, at the time Desotell initially agreed to the wording, he had not contemplated filing his motion to suppress. In counsel's view, the general waiver did not bar an appeal of that motion.

The district court expressed its confusion with this argument. It iterated several times that, in the federal system, a defendant must expressly reserve his right to appeal in the

text of the plea agreement. Counsel acknowledged the court's admonishment, but he refused to accept it:

> MR. CARROLL: Right. I fully understand that, Your Honor, and I think that it's — It's just that I don't think it's correct, and it should be — The Government shouldn't be — control the ability of a defendant to appeal in a criminal case.
>
> …
>
> THE COURT: You may be — Maybe, you're right. You can disagree with the way the law is. But if you're advising your client that he has the right to appeal the denial of his Motion to Suppress, there's a problem. Your client is entering a plea with a false understanding of the law, and you're supposed to tell him what the law is.
>
> …
>
> MR. CARROLL: No, I have not said that. I said, he's not appealing. We had a discussion on Sunday about that, and he understands that. I'm just — I'm trying to make it clear on the record what's actually happening here is the Government is controlling how this man is going to proceed, and he's basically being denied the right to appeal. In exchange, they're going to give him a 25 year sentence versus a 15. [sic] … [W]e made it very clear that we were accepting the plea agreement, and we wanted to reserve our appeal rights. And they basically just said that we have to accept this as written, and this, as written preceded that motion. So I'm just trying to put in the record that that motion is out there, and that he understands they're not agreeing to allow him to appeal.

> THE COURT: Okay. All right. And you intend to really challenge that law, the Government's argument that he's not free to appeal.
>
> MR. CARROLL: Correct.
>
> THE COURT: Okay. I don't know if that's tilting at windmills or not. That's fine as long as your client understands the law, as it stands now, is that unless there's a reservation, a specific reservation that the Government agrees to allowing him to appeal the denial of his Motion to Suppress, entering the plea waives that right.
>
> MR. CARROLL: No, right. … We understand that.

The court summarized the stakes for Desotell and outlined his options in the wake of the denial of the motion to suppress:

> Of course, you know, the Government also has the ability to file the Information as they did and seek a 25 year sentence instead of a 15. That's the *quid pro quo* that's being offered here, and I agree. It's a difficult decision to make. … Do I want to risk a 25 year sentence in order to appeal, or do I simply want to take the 15… ?

The hearing proceeded as usual. After Desotell himself acknowledged the charges against him and provided a factual basis for his plea, the court advised him of the rights he was waiving by agreeing to plead guilty. The court again broached the matter of an appeal:

> THE COURT: Now, the other thing that I want you to understand is that under the law, as it now stands, and your attorney may disagree with this law, but my understanding of the law and what I want you to understand is that there's no right to appeal any

> pretrial ruling once you enter a plea of guilty, unless that's expressly preserved in the plea agreement. And the Government has not entered into an agreement where that's expressly preserved.
>
> So your attorney may have an argument that he thinks he can win on, but my understanding of the law and you should understand this — is this, unless your attorney can succeed in changing the law, you're giving up your right to appeal from my decision denying your Motion to Suppress. Do you understand that?
>
> DEFENDANT: Yes, your honor.

The court accepted the plea and later sentenced Desotell to 180 months in prison—the mandatory minimum sentence on his drug and firearms charges.

Desotell appealed. Mr. Carroll continued his representation by our appointment. But curiously, the docketing statement omitted any mention of the appeal waiver. It stated an intention to challenge the denial of the motion to suppress, but there was no indication of an intent to challenge the plea agreement or the law of waiver generally. Likewise, Desotell's opening brief skipped straight to the merits question; there was no mention of any waiver. The government raised the issue in its response, and Desotell addressed it in his reply brief, where he asserted that the government coerced him into waiving his appellate rights by threatening to pursue an increased mandatory sentence if Desotell proceeded to trial.

## II. ANALYSIS

Desotell asks us to review the denial of his motion to suppress. He argues that the officers did not have reasonable suspicion to detain him or probable cause to search his bags. But

we cannot reach the merits of the Fourth Amendment argument because Desotell waived it—twice.

At the change-of-plea hearing, counsel informed the district court that Desotell intended to appeal the validity of the appeal waiver contained in the plea agreement. The court predicted that it would be a losing argument, but it agreed that Desotell was within his rights to raise it in the court of appeals. Inconceivably, Desotell's brief omitted the argument completely. Even after the government raised the waiver as a bar to relief in its response brief (and noted Desotell's failure to mention it), Desotell pretended as if the omission were irrelevant and made a lengthy argument about why the waiver is invalid.

When we pressed defense counsel for an explanation at oral argument, his excuse was unsatisfactory: he wanted us to "focus on the search issue." That may be true, but it seems more likely that he wanted to hide the ball from us and hope that neither we nor the government would realize that his client waived his right to appeal.

Counsel was present at the change-of-plea hearing and participated in the extensive colloquy with the district court. The court made it exceptionally clear that the waiver barred an appeal and that Desotell would need to challenge the validity of the waiver successfully before appealing the Fourth Amendment issue. That might be enough to resolve this appeal. In most instances, litigants waive any arguments they make for the first time in a reply brief. *Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012); *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011).

But we acknowledge that there is an existing circuit split on the narrower question of whether a criminal defendant must raise the issue of an appeal waiver in his opening brief or whether it falls upon the government to raise the waiver as a defense in its reply. *See United States v. Goodson*, 544 F.3d 529, 533–36 (3d Cir. 2008) ("[A] defendant is not obliged in his opening brief to acknowledge the existence of an appellate waiver and/or to explain why the waiver does not preclude appellate review of the substantive issue. Rather, it is only after the government has invoked an appellate waiver as a bar to our review that a defendant must raise any challenge to the waiver's enforceability."); *United States v. Powers*, 885 F.3d 728, 732 (D.C. Cir. 2018) (same); *but see United States v. Arroyo-Blas*, 783 F.3d 361, 366 (1st Cir. 2015) ("We expect and require counsel to address a waiver of appeal head-on and explain why we should entertain the appeal.").

The parties in this case have not asked us to take a position in that split. Moreover, because we proceed below to evaluate the validity of Desotell's appeal waiver "in an abundance of caution" and find that he waived this appeal on alternative grounds, we need not take a position on whether his failure to include the issue in his opening brief constitutes waiver. *Arroyo-Blas*, 783 F.3d at 367 (quoting *United States v. Gil-Quezada*, 445 F.3d 33, 37 (1st Cir. 2006) (modification deleted)). We only note that the evidence of waiver is exceptionally strong in this case. The district court's repeated insistence of the effectiveness of the appeal waiver made it clear that Desotell's only hope for an appeal was one challenging the waiver's validity itself. Counsel's failure to bring that issue to our attention up front is disappointing.

But Desotell deserves a better explanation than simply that his lawyer failed to make an argument in the opening brief. He should understand why the waiver bars him from appealing his motion to suppress. "[A] defendant may waive the right to appeal his conviction and sentence." *United States v. Cole*, 569 F.3d 774, 776 (7th Cir. 2009) (citing Fed. R. Crim. P. 11(b)(1)(N)). "Generally speaking, appeal waivers are enforceable and preclude appellate review." *United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016). We interpret them according to principles of contract law. *United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999).

"To determine whether the plea was knowing and voluntary, we ask 'whether, looking at the total circumstances surrounding the plea, the defendant was informed of his … rights.'" *United States v. Perillo*, 897 F.3d 878, 883 (7th Cir. 2018) (quoting *United States v. Kelly*, 337 F.3d 897, 902 (7th Cir. 2003)). A knowing and voluntary waiver "must be enforced." *Id.* at 882 (quoting *United States v. Sakellarion*, 649 F.3d 634, 638 (7th Cir. 2011)).

Under Fed. R. Crim. P 11(a)(2), a defendant must "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Interpreting that rule, we've held that "[t]o preserve an issue for appeal, a conditional plea must precisely identify which pretrial issues the defendant wishes to preserve for review." *United States v. Kingcade*, 562 F.3d 794, 797 (7th Cir. 2009) (internal quotation omitted)). "All non-jurisdictional issues not specifically preserved in the conditional plea agreement are waived." *Id.* (citations omitted).

Desotell's signed plea agreement is clear: "the defendant acknowledges and understands that he surrenders any claims

he may have raised in any pretrial motion." Desotell argues that there were two versions of the plea agreement: the first (March), to which he agreed but failed to sign before the government's deadline, and the second (May), which he signed and which was the basis for his conviction. *See* Br. for App. at 5. He contends that the first version did not contain the appeal waiver and that the government coerced him into signing the new version by threatening to seek a higher sentence if he went to trial. *Id.* But both versions appear to be the same document and contain the exact same waiver language. (*Compare* R. 184-6 at ¶ 27 *with* R. 195 at ¶ 27.) In fact, it appears that Desotell's signature and date on both documents is identical, suggesting that there was never a second edition.

Any argument that the district court should have enforced the "first" version rather than the "second" version has no bearing on whether Desotell waived his right to appeal. Although Desotell tried to bargain for removal of the waiver language early in negotiations (*see* R. 184-1), the government never agreed. "[T]he parties' rights under the plea agreement are limited to those matters upon which they actually agreed." *United States v. Williams*, 102 F.3d 923, 927 (7th Cir. 1996) (citation omitted). This waiver is consistent with the law of pleas: "[a] valid guilty plea … renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *United States v. Class*, 138 S. Ct. 798, 805 (2018) (citing *Haring v. Prosise*, 462 U.S. 306, 321 (1983) (a valid guilty plea "results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment.")).

Once a defendant pleads guilty, the government has no need to rely on evidence (that it may have obtained impermissibly) to secure a conviction. There is no question that Desotell was aware of this fact when he entered his plea. The district court went to great lengths to ensure that he understood what rights he was surrendering in return for a lighter sentence than he otherwise might have received after trial.

### III. CONCLUSION

Desotell faced a stark choice: accept the agreement (with the waiver) for a 15-year sentence, or reject the deal, go to trial, and risk 25 years with enhancements for prior convictions. But over counsel's protestations regarding the morality of pleas, the district court correctly instructed Desotell on the law of waiver. Desotell chose to plead guilty.

Moreover, his attorney failed to make any good-faith argument about the validity of the waiver or the constitutionality of plea bargaining. Faced with a rare double waiver, we cannot reach the merits of the Fourth Amendment claim. The appeal is DISMISSED.