In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-2461

JAMAR E. PLUNKETT,

*Petitioner-Appellant,*

*v.*

DAN SPROUL,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cv-00655 — **Nancy J. Rosenstengel**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 17, 2021 — DECIDED OCTOBER 20, 2021

———————————

Before SYKES, *Chief Judge*, and FLAUM, and KIRSCH, *Circuit Judges*.

FLAUM, *Circuit Judge*. A grand jury indicted petitioner-appellant Jamar Plunkett on a charge of distributing crack cocaine. Plunkett pleaded guilty after the government established that his prior Illinois drug conviction subjected him to an enhanced statutory maximum sentence. Plunkett now appeals the district court's decision to deny his § 2241 collateral attack on his sentence. Plunkett, however, waived his

appellate rights, subject only to limited exceptions not presently applicable. Given this waiver, we now dismiss his appeal.

## I.    Background

### A.  Underlying Criminal Case Proceedings

In January 2013, Plunkett sold crack cocaine to a confidential informant. A federal grand jury subsequently indicted Plunkett on one count of distributing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Convictions for offenses under § 841(b)(1)(C) carry a default statutory maximum sentence of twenty years' imprisonment. After Plunkett pleaded not guilty, the government filed an information under 21 U.S.C. § 851 notifying the district court that Plunkett had a 2008 Illinois felony conviction for unlawful delivery of cocaine in violation of 720 Ill. Comp. Stat. 570/401(d). The government asserted that this prior conviction qualified as a predicate "felony drug offense" under § 841(b)(1)(C) and thus subjected Plunkett to an increased statutory maximum prison term of thirty years for his federal drug offense.

Faced with a possible thirty-year prison term, Plunkett reached an agreement with the government to plead guilty in October 2013. In his plea agreement, Plunkett and the government agreed that he qualified as a career offender and that his advisory range under the U.S. Sentencing Guidelines was 188 to 235 months' imprisonment. The government further agreed to recommend a sentence at the low end of the sentencing range. In return, Plunkett agreed to waive his rights to appeal or collaterally attack his conviction or sentence, with limited exceptions. Among these, Plunkett preserved his right

to seek collateral review based on any subsequent change in the interpretation of the law declared retroactive by the Supreme Court or this Court that renders him actually innocent of the charges against him.

The district court accepted Plunkett's guilty plea. During the change-of-plea hearing, the court informed Plunkett multiple times that he faced a statutory maximum sentence of thirty years' imprisonment and engaged him in a lengthy colloquy regarding his understanding of his waiver of his appeal and collateral-attack rights.

The district court then held a sentencing hearing in January 2014. The court found that Plunkett qualified as a career offender and faced a statutory maximum sentence of thirty years' imprisonment. The court further found that the Guidelines recommended an advisory sentencing range of 188 to 235 months' imprisonment. Neither party objected to these findings. Consistent with the terms of the plea agreement, the government then recommended a low-end Guidelines sentence of 188 months. The district court, however, rejected the government's recommendation and ultimately sentenced Plunkett to 212 months in prison—two years above the Guidelines minimum—and six years of supervised release. The court also imposed a $500 fine and a $100 assessment.

### B. Collateral Challenges

#### 1. Section 2255 Motion

Plunkett did not appeal his conviction or sentence, but in January 2015 he filed a pro se motion in the district court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In his motion, Plunkett argued that he received ineffective assistance of counsel because his lawyer did not

correctly calculate his Guidelines sentencing range and did
not appeal his sentence. He did not assert that the district
court incorrectly classified him as a career offender or errone-
ously found that his prior Illinois felony drug conviction sub-
jected him to an increased statutory maximum sentence un-
der § 841(b)(1)(C).

The district court denied Plunkett's § 2255 motion, con-
cluding that Plunkett's waiver of his appellate and collateral-
attack rights foreclosed his claims, which lacked merit in any
event. The court dismissed the motion with prejudice and did
not issue a certificate of appealability. Plunkett filed a motion
for reconsideration under Federal Rule of Civil Procedure
59(e), which the district court also denied.

### 2. Section 2241 Petition

In 2016, while Plunkett's § 2255 motion remained pend-
ing, the U.S. Supreme Court issued its opinion in *Mathis v.
United States*, 136 S. Ct. 2243 (2016). That case reiterated that
(1) the modified categorical approach applies only to divisible
offenses, and (2) a state statute that lists alternative means, as
opposed to elements, of committing the state offense defines
a single, indivisible offense for the categorical analysis. *See* 136
S. Ct. at 2248, 2253, 2257. At the time, Plunkett did not seek to
supplement his pending § 2255 motion with any arguments
based on *Mathis*.

In June 2019, two years after the denial of his § 2255 mo-
tion, Plunkett challenged the use of his 2008 Illinois drug con-
viction to increase his statutory maximum sentence for the
first time. Plunkett filed a pro se petition for a writ of habeas
corpus under 28 U.S.C. § 2241 in the district court, asserting
that his challenge fell within § 2255(e)'s "saving clause"

exception that allows a prisoner to seek habeas relief under § 2241 when the remedy under § 2255 "is inadequate or ineffective to test the legality of his detention." *See* 28 U.S.C. § 2255(e). His petition asserted that after *Mathis* and our subsequent decision in *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), his 2008 Illinois conviction no longer qualified as a predicate offense; he further contended that because of this erroneous classification, his federal sentence was unlawfully enhanced. Specifically, he argued that, under *Mathis*, the statute underlying his state conviction—720 Ill. Comp. Stat. § 570/401—was categorically overbroad because it criminalized a broader range of conduct and substances than its federal counterpart. According to Plunkett, the erroneous application of the increased statutory maximum sentence caused him to suffer a miscarriage of justice because it resulted in an increase in his Guidelines sentencing range based on his career offender status.[1]

The district court denied Plunkett's § 2241 petition on preliminary review. The court interpreted Plunkett's argument that his prior Illinois drug offense should not qualify as a felony drug offense as a challenge to his "designation and sentence as a career offender." The court then explained that Plunkett's career-offender sentence was imposed under the advisory Sentencing Guidelines; therefore, our decision in

---

[1] Specifically, Plunkett asserted that the increase in his statutory maximum sentence to thirty years based on his Illinois conviction resulted in an offense level of 34 and a criminal history category of VI, which together resulted in a Guidelines range of 262 to 327 months. Plunkett argued that without the enhanced statutory penalty, his offense level would have been 31, resulting in a Guidelines range of 188 to 235 months. With a further three-offense-level reduction for acceptance of responsibility, he asserted that his Guidelines range would have been 140 to 175 months.

*Hawkins v. United States*, 706 F.3d 820 (7th Cir.), *supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013), which held that errors in calculating advisory Guidelines ranges are not cognizable on collateral review, precluded Plunkett's challenge. The district court further noted that even if Plunkett's prior Illinois convictions no longer pass muster after *Mathis*, he still had not demonstrated the requisite fundamental defect in his 212-month sentence because it did not exceed the nonenhanced statutory maximum of 240 months for his offense. The district court thus dismissed Plunkett's § 2241 petition with prejudice.

Plunkett again filed a motion for reconsideration. He asserted that the district court misinterpreted his petition as a challenge to his career-offender designation, when in fact he sought to challenge the use of his prior Illinois convictions as predicate offenses for the career-offender enhancement. The district court denied the motion. The court denied misunderstanding the nature of Plunkett's challenge and reiterated that it would not grant relief because Plunkett's final sentence fell within the 240-month statutory maximum even absent the enhancement. The court also explained that the Supreme Court's decision in *Brady v. United States*, 397 U.S. 742 (1970), foreclosed Plunkett's argument that the allegedly erroneous increase in the statutory maximum sentence distorted the plea negotiations and influenced his decision to plead guilty; the court noted that at the time he entered into the plea agreement, Plunkett agreed with the government's assessment that his Illinois drug conviction exposed him to a sentence ranging between 188 and 235 months. The district court concluded that because his sentence fell squarely within that range, he did not raise a viable habeas claim.

This appeal followed.

## II.    Discussion

Plunkett appeals the denial of his § 2241 petition, reasserting many of the arguments he raised before the district court. He contends that his collateral attack on his sentence falls within § 2255(e)'s "saving clause" exception that allows a prisoner to seek habeas relief under § 2241 when the remedy under § 2255 "is inadequate or ineffective to test the legality of his detention." *See* 28 U.S.C. § 2255(e). The government, in addition to responding to this argument, counters that Plunkett's waiver of his collateral-attack rights in his plea agreement precludes his § 2241 petition and requires dismissal of this appeal. "Generally speaking, appeal waivers are enforceable and preclude appellate review." *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019) (quoting *United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016)). Because we agree with the government that Plunkett's § 2241 challenge falls within the scope of his voluntary and knowing collateral-attack waiver, we do not reach the merits of his appeal.

A defendant may waive his right to challenge his sentence on collateral review through a plea agreement, assuming such waiver is knowing and voluntary. *See Dowell v. United States*, 694 F.3d 898, 901–02 (7th Cir. 2012); Fed. R. Crim. P. 11(b)(1)(N). We review de novo the enforceability of a collateral attack waiver in a plea agreement. *See Dowell*, 694 F.3d at 901. "[A] valid and enforceable waiver … only precludes challenges that fall within its scope." *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (second alteration in original) (citation omitted). "We generally enforce an appellate waiver if its terms are express and unambiguous and the record shows that it was knowing and voluntary." *United States v. Bridgewater*, 995 F.3d

591, 595 (7th Cir. 2021). In determining the scope of a waiver, "'[w]e interpret the terms of [a plea] agreement according to the parties' reasonable expectations' and construe any ambiguities in the light most favorable to [the petitioner]." *Dowell*, 694 F.3d at 902 (first alteration in original) (quoting *United States v. Quintero*, 618 F.3d 746, 751 (7th Cir. 2010)); *see also United States v. Galloway*, 917 F.3d 604, 606–07 (7th Cir. 2019) ("We interpret plea agreements—including appellate waivers contained within them—according to ordinary principles of contract law.").

### A. Scope of Plunkett's Collateral-Attack Waiver

As described above, Plunkett's plea agreement contained a broad waiver of his right to seek collateral review of his conviction or sentence. Specifically, Plunkett acknowledged "that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack," but he agreed to "waive[] his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law," other than to appeal the reasonableness of his sentence. Title 28 governs collateral attacks brought under § 2241 and § 2255. Thus, by its terms, the waiver applies to Plunkett's challenge to his sentence.

Plunkett argues, however, that his petition falls outside the ambit of the collateral-attack waiver because the plea agreement preserved his right to challenge his sentence based on "any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders Defendant actually innocent

of the charges covered herein." The parties do not dispute that Plunkett challenges his sentence based on intervening statutory decisions from the Supreme Court and this Court that apply retroactively.[2]

The determinative issue, therefore, is the meaning of the phrase "actually innocent of the charges covered herein." The government essentially contends that this phrase refers only to the underlying offense to which Plunkett pleaded guilty in the agreement.[3] If this definition applies, Plunkett's challenge does not fall within the exception to his collateral-attack waiver because he would remain guilty—that is, *not* actually innocent—of his federal drug offense, regardless of whether he prevails on his challenge to his sentence. Plunkett, on the other hand, argues that, when read in context, the phrase also refers to the applicable sentence enhancement.

We agree with the government's interpretation of the waiver's language. In interpreting plea agreements, we apply

---

[2] Our Circuit has not always taken a uniform approach to answering questions about *Mathis*'s retroactivity. *See Chazen v. Marske*, 938 F.3d 851, 861 (7th Cir. 2019) ("We have likewise suggested (without deciding) that *Mathis* is retroactive."); *see also Liscano v. Entzel*, 839 F. App'x 15, 16 (7th Cir. 2021) ("Our circuit's decisions about the retroactivity of *Mathis* seem to look in different directions."). Because we need not reach a decision on this issue to decide that Plunkett's relied-upon exception is inapplicable in this instance, we proceed, as the parties do, on the assumption that *Mathis* applies retroactively on collateral review.

[3] The government put forward the following definition of "charges" from Law.com: "the specific statement of what crime the party is accused (charged with) contained in the indictment or criminal complaint." *See Charge*, Law.com, https://dictionary.law.com/Default.aspx?typed=charge &type=1 (last visited Oct. 20, 2021).

the ordinary principles of contract law and give unambiguous terms their plain meaning. *Galloway*, 917 F.3d at 607. "Charges"—and specifically "charges covered herein"—is one such term. Black's law dictionary defines a charge as "a formal accusation of an offense as a preliminary step to prosecution." *Charge*, Black's Law Dictionary (11th ed. 2019). This definition suggests that "charge" implies a connection to an offense, which would exclude a sentencing enhancement and which is in accord with common usage of the term.

Petitioner points to the government's use of the phrase "Charging Prior Offenses" to refer to the relevant prior drug offense in its filing titled "Information as to Sentencing" to suggest that the government itself refers to the sentencing enhancement as a "charge." While this argument is not entirely without merit, it is significantly undercut by the fact that this document has no operative effect other than to provide the sentencing court with information relevant to its sentencing decision. *See* 21 U.S.C. § 851. It does not add a charge to the indictment, nor does it indicate that the government will seek to prosecute Plunkett for any additional offense. As its opening sentence states, the document is merely "for use in enhancing any sentence rendered in this case …."

The plea agreement itself extinguishes any lingering doubt as to the meaning of "charges covered [t]herein." The only "charge[] covered [t]herein" is the charge for the distribution of cocaine base. The plea agreement never refers to the sentencing enhancement as a charge, and, in fact, language from another provision of the agreement demonstrates that it recognizes charges and sentencing enhancements as distinct. That provision states that if the Defendant violates any provision of the plea agreement, "the Government is not bound by

the provisions herein and may request that the Court impose on the Defendant any penalty allowable by law, including the filing of *additional charges or sentencing enhancement notices ….*" (emphasis added).

Given that the plea agreement refers to charges and sentencing enhancements as distinct concepts and given that the plain meaning of the term "charges" refers to charged offenses, we hold that a successful challenge to his sentence would not render Plunkett "actually innocent of the charges covered" in the plea agreement. Therefore, this appeal falls squarely into the category of appeals that Plunkett has waived his right to bring.

### B. Plunkett's Waiver Was Knowing and Voluntary

Plunkett may nonetheless escape application of this waiver if it was not knowing and voluntary. In determining whether a waiver contained in a plea agreement was knowing and voluntary, "we must examine the language of the plea agreement itself and also look to the plea colloquy between the defendant and the judge." *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010). A defendant's waiver is knowing and voluntary if he "understand[s] the choice confronting him and … understand[s] that choice is his to make." *United States v. Alcala*, 678 F.3d 574, 579 (7th Cir. 2012) (alterations in original) (quoting *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1182–83 (7th Cir. 1983)); *see also United States v. Johnson*, 934 F.3d 716, 719 (7th Cir. 2019) (explaining that we consider circumstances surrounding the plea to "evaluat[e] whether the district court 'properly informed the defendant that the waiver may bar the right to appeal'" (quoting *United States v. Shah*, 665 F.3d 827, 837 (7th Cir. 2011))). "A written appellate waiver signed by the defendant will typically be

voluntary and knowing, and thus enforceable through dismissal of a subsequent appeal." *Galloway*, 917 F.3d at 606.

Plunkett asserts that he could not have knowingly and voluntarily waived his right to collaterally attack his sentence under *Mathis* because he did not know the correct statutory maximum sentence when he pleaded guilty. We have long expressed the view, however, that plea-bargain appeal waivers involve risk:

> By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

*United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). "That the risk materialized for [Plunkett] does not trump the knowing and voluntary nature of his plea and waiver when he accepted the [g]overnment's deal." *Alcala*, 678 F.3d at 580.

Plunkett argues that our longstanding rule does not apply to challenges, like his, based on intervening retroactive decisions construing the statutory sentence applicable at the time the defendant pleaded guilty. Here, Plunkett draws too fine a distinction. "We have consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments." *United States v. McGraw*, 571 F.3d 624, 631 (7th Cir. 2009). "[T]here is abundant case law that appeal waivers … are effective even if the law changes in favor of the defendant after sentencing," even if those changes are "unforeseen legal changes" that bring

about "a 'sea change' in the law." *Bownes*, 405 F.3d at 636–37; *see also United States v. Vela*, 740 F.3d 1150, 1151 (7th Cir. 2014) (holding that a subsequent change in the law does not render an appeal waiver involuntary). "The point of an appeal waiver, after all, is to prospectively surrender one's right to appeal, no matter how obvious or compelling the basis for an appeal may later turn out to be." *United States v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014); *see also Oliver v. United States*, 951 F.3d 841, 845 (7th Cir. 2020) ("[O]ne major purpose of an express waiver is to account in advance for unpredicted future developments in the law."). As is the case with all contracts, then, parties to plea agreements accept the risk that future circumstances will change in ways that, had those circumstances existed at the time of the bargain, they may not have agreed to so bind themselves. But bind himself Plunkett did. And, per this Court's precedent, a subsequent change in the law regarding the statutory maximum sentence applicable at the time he struck his deal does not render his waiver unknowing or involuntary.

The record here otherwise reveals that Plunkett knowingly and voluntarily waived his right to collaterally challenge his conviction and sentence. In addition to signing a written waiver, which is presumed to be enforceable, *see Galloway*, 917 F.3d at 606, Plunkett also attested in his plea colloquy—to which we lend "particular credence," *Alcala*, 678 F.3d at 578—to the fact that he made the waiver knowingly and voluntarily. And there is simply nothing else in the record to suggest otherwise.

### III.    Conclusion

Because Plunkett's plea agreement contained a valid waiver of his right to collaterally attack his sentence, this appeal is DISMISSED.