In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-1854

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARAYL DAVIS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-0025-1 — **Robert W. Gettleman**, *Judge.*

———————————

ARGUED JANUARY 6, 2022 — DECIDED MARCH 29, 2022

———————————

Before SYKES, *Chief Judge,* and ROVNER and SCUDDER,
*Circuit Judges.*

ROVNER, *Circuit Judge.* Darayl Davis created, promoted,
and operated a complex multi-state scheme to defraud money
from people who entrusted him to place their funds in safe
and lucrative investments. Rather than investing the money
as promised, Davis used it to fund a lavish lifestyle, using the
money on entertainment, exclusive clubs, lavish vacations,
mansions, and luxury car rentals. All told, over the course of

about twenty years, his victims lost approximately $5 million. As is almost always the case with ponzi schemes and their ilk, some victims' lives were devastated by the loss of funds. And, as is also often the result of these schemes, it eventually unraveled and resulted in an indictment. The government charged Davis with nine counts of mail and wire fraud (18 U.S.C. §§ 1341 & 1343), one count of aggravated identity theft (18 U.S.C. § 1028A) and six counts of engaging in monetary transactions in property derived from unlawful activity (18 U.S.C. § 1957). R. 45. Davis was released on bond pending a spring 2020 trial.[1]

As we now know too well, havoc reached the world that spring, and the day before Davis' scheduled pre-trial conference, the district court issued an order creating emergency procedures to address health and safety in light of the beginning of the Covid-19 pandemic. The court's First Amended General Order 20-0012 emphasized that the court remained open for criminal proceedings that could not be delayed. All other non-emergent proceedings, including Davis' trial, were continued until April 6, 2020. When hopes for a short-lived pandemic did not come to fruition, on March 30, 2020, the court entered a Second Amended General Order 20-0012 postponing plea hearings until after May 4, 2020. The order provided that parties in individual cases could request plea hearings held by video or telephone conference pursuant to the 2020 Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 15002(b)(2)(A), Pub. L. No. 116-136, 134 Stat.

---

[1] Approximately one month after Davis was released on bond, his bond was revoked for violating conditions of release. After spending approximately twenty-two months in custody, he was again released on bond and was out on release at the time of the relevant events.

281 (2020), which allows for such hearings during the Covid-19 pandemic if certain preconditions are met. Throughout the relevant time frames the district court continued to issue General Orders with substantially similar provisions.

Over the next several months, the parties negotiated a plea agreement, and the court agreed to exclude that time under the Speedy Trial Act, 18 U.S.C. § 3161, et. seq. During a status hearing on September 24, 2020, when Davis' counsel stated that the parties would be ready for a change of plea hearing in 30-45 days, the court asked if Davis would agree to conduct the plea by telephone conference. Davis' counsel stated "Yes, Your Honor, that's agreeable." R. 187 at 3–4. Davis, who was telephonically present for the hearing did not object. Nor did he object when the district court issued the following order:

> The government and the Defendant Darayl Davis have agreed to proceed with a telephone-conference change of plea hearing.
>
> The Court hereby orders that the change of plea hearing set for November 10, 2020 proceed by telephone conference. This Order memorializes the required findings under the CARES Act § 15002(b)(2)(A), Pub. L. No. 116-136, 134 Stat. 281.
>
> By order dated June 12, 2020, the Chief Judge found that felony pleas and felony sentencings cannot be conducted in person in this district without seriously jeopardizing public health and safety.
>
> Under Section 15002(b)(2)(A), the assigned judge finds that further delay of this hearing

would cause serious harm to the interests of jus-
tice, because the Defendant wishes to advance
the case so that he may accelerate the designa-
tion to a Bureau of Prisons facility, which offers
more programming and more expansive inmate
resources.

R. 143.

The notification of docket entered in the record that day
setting the plea hearing date also stated that the hearing
would be held telephonically. R. 142. The plea hearing was
reset on several occasions at the request of the parties as they
continued plea negotiations. Each time the order indicated
that the hearing would proceed telephonically. R. 144, 145,
146, 147. Davis never objected to the original minute order or
any of the four that followed, each of which indicated that the
hearing would be held by telephone.

On January 19, 2021, when the parties finally conferenced
by telephone for the change of plea hearing, Davis was pre-
sent in his lawyer's office and greeted the court. R. 184 at 2.
The district court assured Davis, "[i]f there's any problem, just
let us know, and … we'll deal with them," and he reminded
him "you may consult with your lawyer at any time during
these proceedings for any reason at all. So if you have any
questions or concerns or anything like that, just let us know,
and you and Mr. Cheronis can speak in private." R. 184 at 3.
The district court, at the government's request, also confirmed
that Davis was agreeing to hold the plea hearing telephoni-
cally.

GOVERNMENT: I might also just ask, I know
the Court previously entered an order on

> September 24th authorizing that the previously scheduled plea hearing be conducted by telephone but just wanted to confirm that that's still Mr. Davis's and the parties' intention and then have that order updated for today's date.
>
> THE COURT: All right. Is that agreeable, Mr. Cheronis?
>
> MR. CHERONIS: Yes, Your Honor. We've discussed it with Mr. Davis and agree to proceed via telephone pursuant to the CARES Act.
>
> THE COURT: Okay. Thank you.

R. 184 at 4. There is no question that the court and government went out of their way to make sure that Davis had consented to the telephonic hearing, both on September 24, when the agreement was made to proceed telephonically, and on January 19, before the hearing began.

Davis did not have any complaints regarding the telephonic plea hearing that day or at any other time until this appeal. Pursuant to his plea agreement with the government, Davis pleaded guilty to one count of mail fraud (Count 6) under 18 U.S.C. § 1341. The government agreed to dismiss all of the remaining eight counts, and in exchange, Davis signed a plea agreement that included a provision in which he waived his appellate rights.

After the court accepted Davis' plea and entered a finding of guilt, the district court judge engaged in a back and forth with Davis' counsel about scheduling the sentencing hearing, including a discussion about whether Davis might agree to a sentencing hearing by video conference. Davis' counsel, ruminating on the question stated, "I guess the issue is just

whether or not they're going to call witnesses. … To the extent that I'd want to cross the witnesses via video, I'd have to think about that and talk to my client about it. If there weren't going to be live witnesses, I would certainly be more amenable to that." R. 184 at 27. The district court stated, "[t]he Court will consider and set an in-person sentencing, if necessary. Would that be agreeable, Mr. Cheronis? And you know, if there's live witnesses, I absolutely agree with you that we'll have to wait until we can do it in person." *Id.* at 28. Later, the court then reiterated, "And I can just assure Mr. Cheronis this. If I think it is necessary for the defense to have in-person proceedings, that's the way we'll do it." *Id.* at 29–30. The court then issued an order memorializing what had occurred during the change of plea hearing, including the fact that Davis had agreed at the outset to holding that hearing by telephone. R. 143. Davis did not dispute the order or that he agreed to proceed telephonically.

During the sentencing hearing, which did indeed proceed by videoconference, Davis spoke for himself and stated that he understood that he had agreed to sentencing via video conference. R. 168 at 4–5. The district court sentenced Davis to 160 months imprisonment and a three-year term of supervised release. He was also ordered to pay $7,171,085 in restitution to approximately twenty-five victims. Davis now appeals, arguing that the district court erred by holding his plea hearing by telephone conference.

In the course of the lengthy negotiations between Davis and the government, Davis signed a plea agreement waiving his appellate rights. As an appellate court, we review de novo whether a waiver of appellate rights contained in a plea agreement should be enforced. *United States v. Brown*, 973 F.3d 667,

718 (7th Cir. 2020) (multiple *denials of cert.* omitted from citation). A plea agreement is a contract between the defendant and the government, and we interpret it as such, holding all parties to their bargain, even if they later have a change of mind. *Plunkett v. Sproul*, 16 F.4th 248, 256 (7th Cir. 2021); *United States v. Sheth*, 924 F.3d 425, 430 (7th Cir. 2019). That bargain included Davis' agreement to waive his appeals in exchange for the government dropping eight of the nine counts against him.

The part of the plea agreement addressing appellate waiver stated as follows:

> 21. b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving *all* appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, *any pre-trial rulings by the Court*, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. …

> 22. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has

> explained those rights to him, and the conse-
> quences of his waiver of those rights.

R. 149 at 13–14 (emphasis ours). Davis does not dispute that he signed the agreement knowingly and voluntarily.

Of course some rights are not waivable, such as the right to effective counsel during a plea negotiation. *See Hurlow v. United States*, 726 F.3d 958, 965 (7th Cir. 2013). It is also true, as Davis notes, that our circuit has held in the past that under Rule 43 of the Federal Rules of Criminal Procedure, all parties must be present for a defendant's plea and therefore the defendant cannot consent to a plea hearing held by videoconference. *United States v. Bethea*, 888 F.3d 864, 867 (7th Cir. 2018). It is undebatable, however, that the CARES Act created an exception to this rule. *See United States v. Coffin*, 23 F.4th 778, 781 (7th Cir. 2022).

The CARES Act allows felony pleas and sentencing to proceed by video or telephone conference if the following conditions are met:

> if the Judicial Conference of the United States finds that emergency conditions due to the national emergency…with respect to the Coronavirus Disease 2019 (COVID–19) will materially affect the functioning of either the Federal courts generally or a particular district court of the United States, the chief judge of a district court covered by the finding … specifically finds, … that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure … cannot be conducted in person without seriously jeopardizing public health and safety, and *the district*

> *judge in a particular case finds for specific reasons*
> *that the plea or sentencing in that case cannot be fur-*
> *ther delayed without serious harm to the interests of*
> *justice*, the plea or sentencing in that case may
> be conducted by video teleconference, or by tel-
> ephone conference if video teleconferencing is
> not reasonably available.

CARES Act § 15002(b)(2)(A) (emphasis ours).[2] The Act also requires that the defendant consent to the telephonic or video conferencing after consulting with counsel. *Id.* at (b)(4).

In other words, the holding in *Bethea*—that pursuant to Rule 43 a defendant cannot waive his right to be present at a plea hearing—was revised by the CARES Act. *Bethea*, 888 F.3d at 867. In fact, *Bethea* itself contemplated that its interpretation of the waivability of Rule 43 could be amended by statute, as it had been in the past. *Id.* at 866. The panel in *Bethea* noted, for example, that Rule 43 was amended in 2011 to permit videoconference pleas for misdemeanor offenses, but not felony pleas, and it also recommended a future "sensible" amendment "to allow discretion in instances where a defendant faces significant health problems." *Id.* at 866, 868. The CARES Act did just what *Bethea* predicted—amended Rule 43 to allow for video or telephonic conferences in the face of significant

---

[2] Davis does not contest the use of the telephonic conference as opposed to a video conference; thus we ignore that distinction here. He makes only a brief mention that "the court made no findings about the availability of video conferencing." Davis Brief at 18–19. This one sentence observation without argument is undeveloped and thus waived. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

health concerns—although in this case the health concerns were global rather than specific to a particular defendant. Just as *Bethea* itself foretold, the holding in *Bethea* no longer applies when Rule 43 has been amended to address just the situation before us. In other words, the district court was operating pursuant to the requirements and allowances of the CARES Act.

Davis concedes, as he must, that the CARES Act allows for telephonic hearings and that he consented to such a hearing, but argues that his consent was necessary but not sufficient to allow the court to proceed by telephone conference. He argues that the court also must have met all of the other prerequisites of the CARES Act, and failed to do so in the case of the one requirement that we have italicized above—a finding that for specific reasons the plea or sentencing in Davis' case could not be further delayed without serious harm to the interests of justice. *See* CARES Act § 15002(b)(2)(A). He argues that the CARES Act suspended the requirement for in person proceedings "*only* in those particular cases where delay is intolerable." Davis' Brief at 9 (emphasis in original). And in his particular instance, Davis argues "[t]he district court's stated concerns about Mr. Davis's access to 'more programming and more expansive inmate resources' do not make sense in this case, where Mr. Davis was not languishing in a county jail, but out on pretrial release, where he could have obtained any necessary additional services." *Id.* Moreover, Davis argued, on pre-trial release he was able to earn money for his eventual restitution payments to his victims, and therefore it was within the interest of justice to delay his hearing and eventual incarceration.

The judge's order scheduling the telephonic plea stated that pursuant to the CARES Act, "the assigned judge finds that further delay of this hearing would cause serious harm to the public interests of justice, because the Defendant wishes to advance the case so that he may accelerate the designation to a Bureau of Prisons facility, which offers more programming and more expansive inmate resources." R. 143 at 1. It is certainly possible that the court, inundated with petitions and confusion during the chaotic beginnings of an unprecedented pandemic, may have issued an order that could have been more well-tailored to Davis' particular situation. But in the tumult of the early days of the pandemic, imprecision could be expected. The court did indeed make a finding under the CARES Act that the "further delay of th[e] hearing would cause serious harm to the interests of justice." R. 143 at 1. And, in fact, that is true. The case had languished for three years, and clearly the public interest in justice is served by incarcerating the guilty, preventing backlog, and having cases move efficiently and in a timely manner through the justice system.

Davis' argument on appeal is, in its essence, an argument that the district court erred in its application of the CARES Act to his case. Davis, however, waived this error and, in fact, all district court error. As we explained recently in *United States v. Coffin*, 23 F.4th 778 (7th Cir. 2022),

> the CARES Act created an exception to the rule that the defendant must be physically present in the courtroom. Section 15002(b) of the Act specifically authorizes plea and sentencing hearings by videoconference if the defendant consents and the three other statutory prerequisites are met. [The defendant] now challenges the

> judge's compliance with one of the CARES Act prerequisites—the requirement of case-specific "interests of justice" findings. That's a claim of CARES Act error—not Rule 43(a) error—and Coffin waived any claim of CARES Act error by expressly declining the opportunity to object to the judge's findings under the Act.

*Id*. at 781. This is precisely what happened in Davis' case. Like Coffin, if Davis "had any objections to the Judge's CARES Act findings, he could and should have brought them to the district court's attention rather than waiting until the appeal to complain for the first time." *Id.* (internal citations omitted).

In this case, however, we need not delve into Davis' waiver of this specific CARES Act claim (although we will address it later below), because Davis waived *all* appellate claims of error. Davis entered into a plea agreement which included a complete waiver of any issues that might have been available if he had exercised his right to trial, including the right to appeal any pre-trial rulings by the court. R. 149 at 13–14. An alleged error in application of the CARES Act is subject to this waiver just like any other claim of error.

When a defendant knowingly and voluntarily enters into a plea agreement to waive his appellate rights, and the terms of that waiver are express and unambiguous, we will enforce those terms. *United States v. Smith*, 759 F.3d 702, 706 (7th Cir. 2014). Davis does not claim that the waiver was ambiguous and not express, and he does not deny that he entered into it knowingly and voluntarily, therefore that is the end of the matter. *See United States v. Cavender*, 228 F.3d 792, 803 (7th Cir. 2000).

But even if Davis had not entered into an agreement waiving his right to appeal any and all errors in the district court, he certainly waived the right to object to the district court's handling of the CARES Act procedure for holding plea hearings by telephone conference. Not only did he not object below, but he affirmatively consented to it. Davis unequivocally agreed to conduct the plea agreement by telephone on two occasions. At the status hearing on September 24, 2020, Davis' counsel, with Davis on the line, explicitly stated in response to a question from the court that Davis was agreeable to conducting the plea hearing by telephone. R. 14 at 3–4. Second, at the plea hearing on January 19, 2021, counsel for Davis (with Davis beside him in his office), stated, "[w]e've discussed it with Mr. Davis and agree to proceed via telephone pursuant to the CARES Act." R. 184 at 4. Davis also failed to object to any of the five minute orders stating that the plea hearing would be held by telephone, or the order in which the court memorialized that Davis had agreed to appear by telephone. R. 143, 144, 145, 146, 147. And when discussing the sentencing hearing, the court and parties engaged in an extended conversation about whether the sentencing hearing might be held in person if the government decided to call witnesses (it did not). R. 184 at 26–28. This colloquy demonstrates that Davis' counsel knew how to ask for an in person hearing, was prepared to do so, and considered the strategies for when he needed to appear in person and when he did not. Davis' counsel discussed with the court at length his strategic thinking, noting that if he needed to cross-examine government witnesses, he would want to do that in person, otherwise he would be amenable to a video or telephonic sentencing.

Davis intentionally relinquished a known right when he expressly stated on the record that he had no objection to the

telephonic change of plea hearing. *United States v. Robinson*, 964 F.3d 632, 639–40 (7th Cir. 2020). The district court judge directly asked Davis' attorney if he had any objection to the use of the CARES Act procedure. Counsel said he did not. That is a textbook waiver. *Coffin*, 23 F.4th at 781. Thus Davis clearly and unequivocally waived his argument that the district court erred when it found that the plea hearing could not be further delayed without serious harm to the interests of justice. Had Davis thought that waiting to hold the plea hearing until the pandemic ended or delaying it for some time would have served his interests better, it was incumbent upon him to inform the court. Instead, he did the opposite and affirmatively consented to the telephonic hearing.

In sum, by signing a plea agreement waiving his right to appeal, Davis waived his right to appeal all errors, including any specific errors made in the application of the CARES Act. Moreover, he waived any error in application of the CARES Act in the district court. For these reasons his appeal is DISMISSED.