In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-3480

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

*v.*

JOSE F. HERNANDEZ

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cr-00462-2 — **Rebecca R. Pallmeyer**, Chief *Judge.*

_____

ARGUED NOVEMBER 3, 2021 — DECIDED JUNE 23, 2022

_____

Before KANNE[*], BRENNAN, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Jose Hernandez pled guilty to a RICO conspiracy charge stemming from his more than three

---

[*] Circuit Judge Kanne died on June 16, 2022 and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

decades of involvement with a violent gang, the Almighty Latin Kings Nation. Like many defendants during the COVID-19 pandemic, Hernandez underwent sentencing by video. In the end, he received 175 months' imprisonment, slightly more than the 138 to 165 months recommended by the Sentencing Guidelines. He now seeks resentencing on two grounds. First, he argues that the district court committed a nonwaivable error when it conducted his sentencing by video without first making a statutorily-required finding. Second, he contends that, given the evidence before it, the district court erred in concluding that he should be held accountable for conspiracy to commit murder. But we disagree on both points and affirm.

I

In July 2016, Jose Hernandez was charged with RICO conspiracy. See 18 U.S.C. § 1962(d). This charge (Count I of a nineteen-count indictment with fifteen co-defendants) related to Hernandez's membership and leadership role in the Maywood, Illinois section of a violent gang, the Almighty Latin Kings Nation. The indictment alleged that Hernandez was the "Inca"—the chief officer—of the Maywood section, in which capacity he "oversaw, directed, guided, and participated" in the gang's unlawful activities. Among the unlawful acts laid out in the indictment were "threats, intimidation, and violence, including acts of murder, attempted murder . . . and other acts of violence."

Three years later, in 2019, Hernandez pled guilty, admitting as part of his plea that (1) the Latin Kings had operated as a criminal enterprise from at least 1999 to 2016; (2) that the enterprise had participated in racketeering activity including threats, intimidation, acts of violence, and extortion; (3) that

he had agreed that he or his co-conspirators would commit at least two acts of racketeering activity in furtherance of the enterprise; and (4) that these activities had affected interstate commerce. In other words, Hernandez admitted to all of the elements of a § 1962(d) violation.

By the time Hernandez was due for sentencing in December 2020 our nation was deep in the midst of the COVID-19 pandemic. Congress had by then passed the CARES Act, which permits felony sentencings—ordinarily required to be in person, see Fed. R. Crim. P. 43(a)—to proceed by video when four criteria are satisfied. See Pub. L. 116-136, § 15002(b)(2) (Mar. 27, 2020). The exception to in-person sentencing applies when: (1) the Judicial Conference of the United States finds that emergency conditions related to COVID-19 will materially affect the functioning of the federal courts; (2) the chief judge of the district court in which the defendant is to be sentenced finds that felony sentencings cannot be conducted in person without seriously jeopardizing public health and safety; (3) the sentencing judge in the defendant's case finds for specific reasons that sentencing cannot be further delayed without serious harm to the interests of justice; and (4) the defendant consents to appear by video. *Id.*

Hernandez's sentencing hearing was held on December 10, 2020. The first two CARES Act criteria—the required findings by the Judicial Conference and chief district judge—had been satisfied, so all that remained was for the sentencing judge to find that Hernandez's sentencing could not be delayed without serious harm to the interests of justice and for Hernandez to consent to proceed by video. But although the district judge obtained Hernandez's consent at the outset of

sentencing, the required interests-of-justice finding was over-looked—an error that no one ever flagged for the district judge.

The district judge calculated a Guidelines sentencing range of 135 to 168 months, premised on a total offense level of 33 for Hernandez's racketeering conviction. This calculation was driven by Guideline § 2E1.1, which sets the base offense level for racketeering as the greater of 19 or that of the most serious underlying racketeering activity. Hernandez insisted that the most serious underlying activity he should be held accountable for was attempted murder, which garners a base offense level of 27. But the district judge thought otherwise, concluding that the evidence was sufficient to hold Hernandez liable for conspiracy to commit murder, which carries a higher base offense level of 33. The district judge increased the base offense level by three levels for Hernandez's leadership role in the Latin Kings and reduced the total offense level by three for his acceptance of responsibility. The judge then chose a slight upward variance in imposing Hernandez's sentence, ordering 175 months' imprisonment.

Hernandez now appeals, pressing two arguments for why we should order him resentenced. First, he contends that the district judge committed an automatically reversible error in failing to make the required CARES Act finding that his sentencing could not be further delayed without serious harm to the interests of justice. Second, he argues that the district judge erred in finding that he could be held accountable for conspiracy to commit murder under Guideline § 2E1.1.

## II

Pointing to Federal Rule of Criminal Procedure 43(a)(3), which requires a defendant's in-person presence for sentencing, Hernandez argues that the district judge committed an automatically reversible error in failing to make the required CARES Act finding that his sentencing could not be further delayed without serious harm to the interests of justice. But Hernandez's argument is foreclosed by our decision in *United States v. Coffin*, 23 F.4th 778 (7th Cir. 2022). Although Rule 43 requires in-person sentencing, the CARES Act provides otherwise so long as the relevant findings are made and consent is obtained, and *Coffin* holds that CARES Act errors are subject to the ordinary rules of waiver and forfeiture. See *id.* at 781 (holding that the defendant had waived any challenge to the district court's interests-of-justice finding by failing to object when given an opportunity to do so by the district judge).

Hernandez has at the very least forfeited his CARES Act argument by failing to raise it with the district court, meaning his claim receives only plain-error review. To obtain relief, Hernandez must therefore show (1) an error; (2) that is clear or obvious; (3) that affected his substantial rights; and (4) which, if uncorrected, would impugn the fairness, integrity, or reputation of judicial proceedings. *United States v. Butler*, 777 F.3d 382, 388 (7th Cir. 2015).

The plain-error standard is insurmountable here. Hernandez insists that the CARES Act criteria weren't satisfied—that further delay for in-person sentencing would have harmed no one, including him. But it's not enough for plain-error purposes to argue simply that the district judge erred by omitting a required finding. Unless Hernandez shows that his

substantial rights were affected—that he was prejudiced, in other words—the principle of no harm, no foul controls. Hernandez fails to argue (as he must, to obtain relief), that without the CARES Act omission, there would have been a "reasonable probability of a different outcome." *United States v. Williams*, 949 F.3d 1056, 1068 (7th Cir. 2020). Nor do any signs in the record point us to that conclusion.

Hernandez spoke on his own behalf at sentencing, as was his right, see Fed. R. Crim. P. 32(i)(4), and had the opportunity to make any sentencing argument he wished. Nothing suggests that the district judge discounted Hernandez's allocution or otherwise viewed his sentencing arguments less favorably merely because he made them remotely. To the contrary, the district judge observed that Hernandez is a devoted father and noted that "his efforts in so many directions have been very positive," especially with regard to his pursuit of lawful employment as a medical technician. But the district judge found these positive factors to be outweighed by the mandatory sentencing factors laid out in 18 U.S.C. § 3553. In particular, the district judge thought there was a "very significant" need for deterrence in light of the violence perpetuated by the Latin Kings throughout Hernandez's 30-year involvement with the gang.

Given the district judge's evident sympathy for Hernandez and recognition of the hardships his sentence would impose on his family, we doubt that Hernandez could have obtained a more favorable result by making the same sentencing arguments in person rather than remotely. Whether Hernandez's circumstances warranted remote sentencing under the CARES Act is immaterial—nothing suggests that he is worse off for having done so. His substantial rights were unaffected,

so the CARES Act omission warrants no relief on plain-error review.

III

Hernandez further argues that the district court erred in basing its Guidelines calculation off a base offense level of 33 for conspiracy to commit murder, see USSG § 2A1.5, instead of a base offense level of 27 for attempted murder, see *id.* § 2A2.1(a)(2). As he sees it, the government did not provide enough evidence to conclude—even by the preponderance of the evidence standard applicable to sentencing determinations, see *United States v. Hall*, 608 F.3d 340, 346 (7th Cir. 2010)—that he was responsible for conspiracy to commit murder.

We review the factual findings underlying a district court's Guidelines calculation for clear error. *United States v. Garcia*, 948 F.3d 789, 806 (7th Cir. 2020). Under the clear error standard, we reverse only where, having reviewed the entire record, we are left with "a firm and definite conviction that a mistake has been made." *United States v. Ranjel*, 872 F.3d 815, 818 (7th Cir. 2017).

Relying on our decision in *United States v. Garcia*, 754 F.3d 460 (7th Cir. 2014), Hernandez argues that the district court applied the conspiracy to commit murder cross-reference based solely on his membership in a gang. This won't do, he insists, because *Garcia* requires something more. But this argument rests on a skewed reading of *Garcia* and sharply discounts the evidence that *was* presented against Hernandez at sentencing.

*Garcia* consolidated the appeals of numerous defendants, all of whom had been members of the Latin Kings. 754 F.3d at

465. One of the defendants, a former Inca named Chavez, argued on appeal that he had been wrongly held liable for conspiracy to commit murder solely because of his gang membership. *Id.* at 481. But we concluded that wasn't the case; instead, the district court had applied the conspiracy to commit murder cross-reference based on audio recordings in which the defendant boasted of an attempted murder carried out by his subordinates with his awareness. *Id.* Because we identified this direct evidence—the audio recordings—as the basis for the conspiracy liability applied in *Garcia*, Hernandez reasons that such evidence should be required in his case, too.

But this confuses the sufficient with the necessary. In *Garcia*, Chavez's recorded boasts undoubtedly provided sufficient evidence for the district court to conclude that he had conspired to commit murder. Yet the comparatively indirect evidence here suffices, as well.

In sentencing Hernandez, the district court relied on the presentence report—which it was entitled to do absent some challenge by Hernandez to the report's contents. See *United States v. Miller*, 834 F.3d 737, 743 (7th Cir. 2016). And the report, which itself relied heavily on the government's retelling of events (also unchallenged by Hernandez), provided ample grounds to conclude that Hernandez should be held accountable for conspiracy to commit murder.

The PSR revealed (as was true in *Garcia*), that Hernandez had, as Inca, been responsible for "implement[ing] the set of rules and regulations contained in the gang's constitution." These policies were violent in the extreme, providing that runaway gang members should be viciously beaten and rival gang members shot on sight. And so far as appears, Hernandez took the gang's policies seriously; the PSR concluded that,

as Inca, he had "approv[ed] and order[ed] acts of violence," such as by directing his subordinates to perform "security" measures that entailed standing orders to shoot rival gang members.

Aside from Hernandez's role as Inca in overseeing the Latin Kings' rules, Hernandez had also personally furthered the gang's murderous aims. For example, the government submitted audio recordings in which Hernandez offered an AR-15 rifle to other members of the Latin Kings for security activities—activities that, as noted earlier, involved standing orders to shoot rival gang members. Hernandez got personally involved in the gang's "security," too. Another audio recording revealed that Hernandez had previously, as a member of the Latin Kings, shot at members of the Gangster Disciples, a rival gang. And this was in addition to an incident in which Hernandez was arrested for pointing a gun at two police officers who he believed to be rival gang members.

The PSR provided the district court with evidence that Hernandez was not only responsible as Inca for enforcing the Latin Kings' violent policies, which sometimes required shooting rival gang members, but that he had also directly furthered those policies by offering lethal weapons to his fellow gang members and by personally participating in the gang's "security" activities. Surely this was enough for the district court to conclude that Hernandez had conspired to commit murder in furtherance of his gang's racketeering activities.

AFFIRMED