In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 21-3230

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MIGUEL NAVARRETE, JR.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 21-CR-73-JPS — **J.P. Stadtmueller**, *Judge.*

---

ARGUED SEPTEMBER 12, 2022 — DECIDED DECEMBER 13, 2023

---

Before EASTERBROOK, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

EASTERBROOK, *Circuit Judge*. Miguel Navarrete was charged with possessing a firearm, which as a felon he could not lawfully do. 18 U.S.C. §§ 922(g)(1), 924(a)(2). Both Navarrete and the prosecutor proceeded by video under the CARES Act, which during the COVID pandemic permitted arraignments and sentencings by video when four criteria are

satisfied. See Pub. L. 116-136, §15002(b)(2) (Mar. 27, 2020). Navarrete was arraigned and pleaded not guilty, by video, on May 7, 2021. He gave consent on the record, and all necessary findings were made. On August 26 he pleaded guilty, again by video, and again consented on the record. Again all necessary findings were made. He was sentenced on November 19 to 58 months' imprisonment, a term below the bottom of the range (77 to 96 months) calculated under the Sentencing Guidelines. That proceeding, too, occurred by video.

Instead of calling himself fortunate, Navarrete appealed. He contends that he is entitled to be resentenced because he did not appear personally in court. But for the CARES Act, in-person sentencing would have been required. Fed. R. Crim. P. 43(a). And Navarrete maintains that the CARES Act did not authorize the use of video at his sentencing, because the judge neglected to put his consent on the record. Perhaps everyone in the room assumed that, having consented twice already (for the arraignment and the change of plea), Navarrete was happy with appearance by video. The judge asked his lawyer whether "you or your client have any reason to advance this morning as to why the Court ought not proceed today with the imposition of sentence in this case?" Defense counsel replied, "No, Your Honor." Still, failing to protest an appearance by video differs from consent. It is unfortunate that the judge, prosecutor, and defense counsel all missed the need for Navarrete's formal consent on the record.

Navarrete's current lawyer recognizes that his predecessor neglected to raise the issue in the district court but insists that lack of oral consent leads to automatic reversal. Counsel uses the rubric of "plain error," but even the plainest of errors does not generate *automatic* reversal. See, e.g., *United States v.*

*Olano*, 507 U.S. 725 (1993); *Greer v. United States*, 141 S. Ct. 2090 (2021). The Court explained in *Olano* that the plain-error standard leads to reversal only if the error is clear ("plain"), affects substantial rights, *and* seriously affects the fairness, integrity, or public reputation of judicial proceedings. 507 U.S. at 735–37. We held in *United States v. Hernandez*, 37 F.4th 1316, 1318–19 (7th Cir. 2022), that failure to obtain consent on the record to appearance by video does not satisfy the plain-error standard.

Today's appeal shows why that makes sense. A defendant appearing by video is not being sentenced *in absentia* (a possibility that Rule 43(a) is designed to block). Defendant, counsel, and judge see one another and can converse (and did). Navarrete could make allocution, and his counsel could present arguments in mitigation—which he did, with notable success. Navarrete thus enjoyed the "substantial" part of the entitlement secured by Rule 43(a), and the absence of a formal consent on the record to a video appearance that was evidently voluntary on the defendant's part doesn't call the justice system into disrepute. Navarrete does not contend that, if asked for consent on the record, he would have refused, nor does he even try to show how an in-person procedure would have differed from his actual sentencing. The requirements of plain-error review have not been satisfied.

To obtain the benefit of automatic reversal, it is not enough to argue plain error. Instead a defendant must establish *structural* error—and we read Navarrete's brief as making such an argument, despite its use of plain-error language. The brief calls it "*per se* error," which seems to be his paraphrase of structural error. Before the CARES Act was adopted, we too used the language of "*per se* error" when a judge sentenced a

defendant over a video link. *United States v. Bethea*, 888 F.3d 864, 867 (7th Cir. 2018). The problem at the time of *Bethea* was the absence of any authority for a defendant to appear by video. The CARES Act provided that authority. A judge's neglect to ensure that all statutory conditions have been satisfied differs in substance from conducting a proceeding in an utterly unauthorized way.

> As for structural error:
>
> Only in a "very limited class of cases" has the Court concluded that an error is structural, and "thus subject to automatic reversal" on appeal. *Neder v. United States*, 527 U.S. 1, 8 (1999).
>
> Structural errors are errors that affect the "entire conduct of the [proceeding] from beginning to end." [*Arizona v.*] *Fulminante*, 499 U.S. [279,] 309 [(1991)]. The "highly exceptional" category of structural errors includes, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *United States v. Davila*, 569 U.S. 597, 611 (2013).
>
> By contrast, discrete defects in the criminal process—such as the omission of a single element from jury instructions or the omission of a required warning from a Rule 11 plea colloquy—are not structural because they do not "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 9 (omission of element from jury instructions); see also [*United States v.*] *Dominguez Benitez*, 542 U.S. [74,] 81 n.6 [(2004)] (omission of Rule 11 warning from plea colloquy).

*Greer*, 141 S. Ct. at 2099–2100 (cleaned up). The absence of consent on the record to appearance by video during sentencing did not affect the "entire conduct" of the proceedings and did

not "necessarily" render the outcome unreliable. It is at worst a "discrete defect" outside the domain of structural error.

As far as we can tell, none of the courts of appeals has held that failure to obtain on-the-record consent to video sentencing is a structural error—or for that matter a plain error. See, e.g., *United States v. Rodriguez-Monserrate*, 22 F.4th 35, 45 (1st Cir. 2021) (rejecting use of structural error approach and finding any error not plain); *United States v. Leroux*, 36 F.4th 115, 121–22 (2d Cir. 2022) (plain error standard not met); *United States v. Rodriguez-Rios*, 2021 U.S. App. LEXIS 24001 (9th Cir. Aug. 12, 2021) (plain-error standard not met even when defendant did not knowingly consent to video appearance). We are not willing to overrule *Hernandez* and are even less inclined to create a novel category of structural error that does not satisfy the criteria in *Greer*.

AFFIRMED

JACKSON-AKIWUMI, *Circuit Judge*, dissenting.  The issue in this case is whether a district court errs when it conducts a sentencing hearing via videoconference without obtaining the defendant's consent. I believe our circuit's CARES Act case law is inconsistent on that question, and the majority opinion further muddies the waters. Although the CARES Act itself may now be obsolete, the contradictions in our case law could create confusion about the general requirements of Federal Rule of Criminal Procedure 43, the rule governing a defendant's presence in the courtroom. I am therefore compelled to dissent.

In *United States v. Bethea*, 888 F.3d 864, 867 (7th Cir. 2018), we held that a judge violates Rule 43's in-person requirement and commits *per se* error by conducting a felony plea via videoconference. The majority opinion observes that *Bethea*'s holding was a result of "the absence of any authority for a defendant to appear by video" at the time, *ante*, at 4, and concludes that the CARES Act provides the necessary authority that was lacking back in 2018 when *Bethea* was decided. So, because the CARES Act permits the use of videoconference for felony pleas and sentencings under certain circumstances, the majority opinion appears to view the Act as functionally overruling *Bethea*. But that conclusion is not supported by the weight of our precedent.

Just last year, we decided *United States v. Howell* and endorsed the continued applicability of *Bethea* even after the passage of the CARES Act. 24 F.4th 1138, 1143 (7th Cir. 2022) ("Consistent with *Bethea*, we find that Rule 43(c)(1)(B)'s limited exception did not create a general waiver system permitting sentencing by video teleconference whenever a defendant consents."). *Howell* concluded that "a felony defendant

cannot agree to be sentenced by video teleconference unless [the CARES Act] is satisfied," *id*. at 1141 (emphasis added), indicating that the CARES Act did not supersede *Bethea* but instead created an exception to *Bethea*'s holding. In other words, if the four prerequisites[1] of the CARES Act are not satisfied, then *Bethea* still governs. And if *Bethea* still governs, a videoconference felony sentencing violates Rule 43 and constitutes a "*per se* error" that warrants reversal. *Bethea*, 888 F.3d at 867.

Navarrete's argument is rooted in our decision in *Howell*. He argues that because the CARES Act prerequisites were not satisfied during his videoconference sentencing, his sentencing should have taken place in-person, as required under Rule 43. Because it did not, he urges us to vacate and remand for resentencing. The government does not contest Navarette's claim that the CARES Act prerequisites were not satisfied. To the contrary, the government concedes that the district court did not (1) make a case-specific finding that Navarette's sentencing could not be "further delayed without serious harm to the interests of justice," or (2) establish Navarrete's consent to proceed by videoconference. Under *Bethea* and *Howell*, that concession should be fatal to the government's position. In

---

[1] The CARES Act authorizes the use of video and telephone conferencing when four conditions are met: (1) the Judicial Conference of the United States finds that the COVID-19 pandemic will materially affect the functioning of the federal courts; (2) the chief judge of the district court finds that felony sentencings cannot be held in person without seriously jeopardizing public health and safety; (3) the presiding district judge finds that the sentencing in a particular case "cannot be further delayed without serious harm to the interests of justice"; and (4) the defendant consents to proceed by video teleconference after consulting counsel. *See* Pub. L. No. 116-136, § 15002(b)(2), 134 Stat. 281, 527-30 (2020).

holding otherwise, the majority effectively abrogates not just those cases, but also our most recent cases applying their principle.

Around the same time that *Howell* confirmed the continued applicability of *Bethea*, we decided two other CARES Act cases: *United States v. Coffin*, 23 F.4th 778 (7th Cir. 2022), and *United States v. Davis*, 29 F.4th 380 (7th Cir. 2022). Both *Coffin* and *Davis* acknowledged that the CARES Act revised *Bethea*'s application but did not alter its central holding. *See Coffin*, 23 F.4th at 781 (The "CARES Act created an exception to the rule" and "specifically authorizes plea and sentencing hearings by videoconference if the defendant consents and the three other statutory prerequisites are met"); *Davis*, 29 F. 4th at 385–86 ("The CARES Act created an exception to [*Bethea*'s] rule" and "did just what *Bethea* predicted—amended Rule 43 to allow for video or telephonic conferences in the face of significant health concerns"). By describing the CARES Act as creating an exception to *Bethea*, these cases indicate that *Bethea* remains the default rule. In *Coffin* and *Davis*, all four CARES Act preconditions were satisfied in some capacity, so there was no question that the Act governed each case. The defendants in those cases challenged the content of specific CARES Act findings—they did not argue that the district court failed to make specific CARES Act findings altogether. Challenging the substance of a district court's CARES Act finding is "a claim of CARES Act error—not Rule 43(a) error," and such errors are subject to the standard rules of waiver and forfeiture. *Coffin*, 23 F.4th at 781; *Davis* 29 F.4th at 387.

But Navarrete is not challenging the substance of the district court's CARES Act findings. Rather, he argues, and the government concedes, that the district court failed to satisfy

the conditions required for the CARES Act to apply in the first place. Consequently, he asserts that this failure is not a CARES Act error, but a Rule 43(a) error. And, as we held in *Bethea*, such violations of Rule 43(a) constitute *per se* error, warranting reversal.

So why do I anticipate confusion? The majority opinion does not address the substance or logic of Navarrete's argument, and instead relies on *Hernandez*—another CARES Act case we decided last year. 37 F.4th 1316 (7th Cir. 2022). *Hernandez* dealt with an argument that is nearly identical to the one Navarrete makes here. The district court in *Hernandez* failed to make one of the required CARES Act findings, so the defendant argued on appeal that the judge violated Rule 43(a) and thus committed *per se* error under *Bethea*. However, purportedly relying on *Coffin*, the *Henandez* panel held that the defendant had forfeited his challenge to the district court's omission of the mandatory CARES Act factor because he did not raise it before the district court. *Hernandez*, 37 F.4th at 1319. Even though one of the prerequisites for CARES Act application remained unsatisfied, the *Hernandez* panel treated the lack of an in-person sentencing as being governed by the CARES Act. This is where the potential for confusion originates. In our pre-*Hernandez* cases, we treated the failure to make a specific CARES Act finding as *per se* reversible error. And without ever overruling any of those cases, *Hernandez* decided that it was not. By following *Hernandez*'s path, today's majority only adds to the confusion wrought by *Hernandez*.

The CARES Act carves out a limited exception to Rule 43's in-person requirement if the district court makes certain mandatory findings. If the court does not make those findings,

then we are working within the general requirements of Rule 43 and *Bethea*. *Hernandez*'s conclusion that the CARES Act applies even when it is not properly invoked presents two serious problems: first, it sidesteps Rule 43 and treats as optional the explicit prerequisites Congress established in the CARES Act. That approach directly contradicts the well-established principle that where, as here, Congress has promulgated statutory language that is "plain," our "sole function" is to give effect to that plain language. *See Dodd v. United States*, 545 U.S. 353, 359 (2005); *see also* ANTONIN SCALIA & BRYAN A, GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012). But there is yet another problem: *Hernandez* and today's majority opinion are inconsistent with the reasoning in *Coffin*, *Davis*, and *Howell*. Each of those cases acknowledge that the CARES Act revised *Bethea*'s holding in certain circumstances, but did not eliminate *Bethea*'s precedential relevance. I cannot reconcile one thread with the other—the *Coffin*/*Davis*/*Howell* thread versus *Hernandez* and today's decision—and I anticipate litigants will encounter the same dissonance.

I express no opinion on whether *Bethea* should or should not be overruled in the wake of *Greer v. United States*, 141 S. Ct. 2099, 2100 (2021), and its discussion of structural error—an issue the parties did not address either. But I do not believe we can say that *Bethea* is functionally obsolete when we have three recent cases implying *Bethea*'s continued applicability. Our court should address these inconsistencies to avoid any further confusion about the general requirements of Rule 43.

Lastly, I take issue with the majority opinion's statement that a "defendant appearing by video is not being sentenced in absentia . . . Defendant, counsel, and judge see one another and can converse (and did)." *Ante*, at 3. This statement

suggests there is little benefit to holding in-person sentencing hearings, and video proceedings have the same effect so long as the participants can see and speak with everyone. But our circuit has "recognized the value of the defendant and judge both being physically present." *Bethea*, 888 F.3d at 867. We have held that the "judge's absence from the courtroom materially changes the character of the proceeding" and "the same is true if the defendant is the person missing." *Id*. (citing *United States v. Thompson*, 599 F.3d 595, 601 (7th Cir. 2010)). "The important point is that the form and substantive quality of the hearing is altered when a key participant is absent from the hearing room, even if he is participating by virtue of a cable or satellite link." *Id*. (quoting *Thompson*, 599 F.3d at 600). And the "defendant's face-to-face presence helps ensure that the district judge fully confronts the gravity of the sentence imposed." *Howell*, 24 F.4th at 1142. The majority opinion is inconsistent with these sound holdings.

For these reasons, I respectfully dissent.